Daniel **WEBSTER, Individually and as the personal representative of the estate of Laurie Webster, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 89–112–M–CCL.**

United States District Court, D. Montana, Missoula Division.

Oct. 1, 1992.

---

Edward K. Duckworth, Ronan, MT, for plaintiff.

Kris McLean, Asst. U.S. Atty., Helena, MT, Loretta King, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

LOVELL, District Judge.

The United States has filed a motion to dismiss or, in the alternative, for summary judgment on the grounds that Plaintiff's action falls outside of the waiver of sovereign immunity contained in the Federal Tort Claims Act ("FTCA") and is not based upon the negligence of federal employees. The matter having been fully briefed, the court is prepared to rule.

## BACKGROUND

This action was brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.*, by Plaintiff Daniel Webster, individually and as the personal representative of the estate of Laurie Webster. Plaintiff seeks damages for the wrongful death of Laurie Webster occurring on August 22, 1986, while she was attending a stock car race at the Mission Valley Speedway near Pablo, Montana. During the event, a race car went out of control and landed in a parking lot being used as a spectator area. Laurie Webster was killed in the mishap.

The Mission Valley Speedway is located on the Flathead Indian reservation near Pablo, Montana. The property on which the Speedway is located is held by the United States in trust for the Confederated Salish and Kootenai Tribes of the Flathead Reservation ("the Tribes"). The land may be leased or sold by the Tribes with the approval of the Secretary of the Interior.

For several years, the Tribes had leased the land on which the Speedway is located to Mission Valley Speedway for the purpose of auto racing and other sports activities. The lease at issue in this case is Lease No. 6061. The Tribes negotiated this lease with Mission Valley Speedway and entered into a formal written agreement on January 7, 1983.

The lease was reviewed by the Bureau of Indian Affairs ("BIA"), and approved by the Superintendent of the Flathead Agency, Bureau of Indian Affairs, Department of the Interior, on January 25, 1983. Approval by the Superintendent is tantamount to approval by the Secretary of the Interior.

Under the terms of Lease No. 6061, the lessee agreed to pay the lessor 20 percent of the gross gate receipts, payable after each event. The BIA received a lease fee of five dollars upon approval of the lease. The following provisions were included in the lease agreement:

15. ... the lessee agrees to maintain and construct facilities in accordance with applicable health and safety laws and regulations.

17. *Lessee further agrees that at all times during the term of this lease, Lessee* SHALL CARRY A PUBLIC LIABILITY INSURANCE POLICY for personal injury and property damage. Neither the Lessor, nor their officers, agents and employees shall be liable for any loss, damage or injury of any kind whatsoever to the person or property of the lessee or any other person whomsoever, caused by any use of the leased premises, or by any defect in any structure erected thereon, or arising from any accident, or other casualty on said premises or from any other cause whatsoever,.... (emphasis in original).

22. The Club agrees to accept the Pablo Speedway facility in its present condition and without any representation or warranties being made by the Tribes and the Tribes shall not be responsible for any latent or other defect in the facility. The taking of possession of the Pablo Speedway shall be good and conclusive evidence that the same was in good and satisfactory condition at the time possession was taken.

23. ... The Club further agrees that it will assume responsibility for the cost of necessary maintenance and repairs during the period of time covered under this agreement.

On June 2, 1983, after the death of Dennis Dumont, the manager of the Mission Valley Speedway and signatory on Lease no. 6061, the lease was assigned to Mission Valley Auto Racers, Inc. ("MVAR"). The assignee agreed to fulfill all of the obligations, conditions, and stipulations in the original lease. The assignment to MVAR was approved by the Superintendent on June 7, 1983.

By its terms, Lease No. 6061 expired in January, 1986. A new lease for the property was not executed until August, 1988. In the interim, MVAR continued to pay the Tribes 20 percent of the gate receipts and to maintain liability insurance. MVAR also continued to exercise complete control over the property on which the racetrack was located.

As with all their leases, Lease No. 6061 was negotiated by the Tribes without the involvement of the BIA. When the Tribes sought approval of the lease, the BIA examined the lease for the inclusion of standard provisions and to assure there were no violations of federal statutes and regulations concerning the leasing of tribal land. The BIA did not inspect the racetrack before approving the lease nor did it inspect the track at any time during the course of the lease or after it had expired in January, 1986.

## DISCUSSION

■ In the complaint, Plaintiff alleges that Defendant was negligent in allowing a lease of its land for use as a speedway when the speedway was not safely signed, barricaded, constructed or designed. Plaintiff also alleges that the speedway contained hidden dangers or perils and that the United States failed to warn spectators about these dangers. Plaintiff further alleges that Defendant failed to adequately consider safety before originally approving the lease and that during the term of the lease and the periods of lease renewal and extension Defendant failed to give adequate consideration to the safety of the speedway or take steps to cause the modification, redesign, or reconstruction of the speedway. Plaintiff also alleges that during the term of the lease, Defendant failed to cause the construction of protective barriers or provide for the proper control of spectators at speedway events. Finally, it is alleged that Defendant allowed the lease to continue even though it knew the speedway was operated by an irresponsible lessee.

The Federal Tort Claims Act effectively waives, "with certain exceptions, the government's traditional sovereign immunity from suit for common law torts committed by government agents, 28 U.S.C. § 2674, but the source of the claim for relief must be the law

of the state where the act or omission occurred." *Trombetta v. United States,* 613 F.Supp. 169 (D.Mont.1985). Based on this general rule, Plaintiff asserts that Montana law will determine the duties the government owed to the spectators at the speedway. Because contracts in Montana which release a landowner from all liability are unenforceable when they are contrary to public policy, Plaintiff argues that the government cannot avoid liability by virtue of the lease terms which delegated all responsibility for speedway safety to the lessee.

Plaintiff bolsters his argument by asserting that the racing at the speedway was inherently dangerous. Plaintiff then analogizes this case to cases decided in the context of employment relationships where the duty to provide a safe workplace was determined to be non-delegable when the activity is inherently dangerous. Plaintiff cites *McCall v. United States Department of Energy,* 914 F.2d 191 (9th Cir.1990) where it was held that Montana had adopted § 416 and § 427 of the Restatement (Second) of Torts in *Kemp v. Bechtel Construction Company,* 221 Mont. 519, 720 P.2d 270 (1986). These sections impose upon a project owner a non-delegable duty "to ensure that contractors performing inherently dangerous work employ proper safety precautions." *McCall,* 914 F.2d at 195. The court concluded that "[u]nder the FTCA, the government may not be held vicariously liable for the negligence of independent contractors but may be liable where its own employees have breached the duty through their own negligent conduct." *Id.* at 196.

Plaintiff argues that the same policy considerations under which *McCall* was decided exist in the instant case. Plaintiff contends that the protection of the public as spectators at the speedway is an important responsibility which the United States, like project owners and general contractors, should not be allowed to delegate.

### Discretionary Function Exception

As stated in the *Trombetta* opinion, the FTCA waives the government's traditional sovereign immunity from suit for common law torts by government agents "with certain exceptions." These exceptions, if applicable, constitute jurisdictional bars to suit and must be overcome before a plaintiff can bring suit under state law.

Defendant moves for dismissal or, in the alternative, for summary judgment, claiming that Plaintiff's action is barred by the discretionary function exception to the FTCA. As stated above, the FTCA authorizes suits against the United States for damages for personal injuries or death when a private person would be liable under the law of the place where the act or omission causing the injury occurred. *See* 28 U.S.C. §§ 1346(b), 2674. Such an action for damages is not available, however, when the act or omission complained of is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

In *Prescott v. United States,* 959 F.2d 793 (9th Cir.1992), the Ninth Circuit Court of Appeals held:

> Because an exception to the FTCA's general waiver of immunity, although jurisdictional on its face, is analogous to an affirmative defense, we believe the Sixth and Seventh Circuits correctly placed the burden on the United States as the party which benefits from the defense. Today, we follow these two circuits and adopt the rule as set forth by the Sixth Circuit in *Carlyle* [*v. United States,* 674 F.2d 554 (6th Cir.1982).] We thus hold explicitly that the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity.

*Prescott,* 959 F.2d at 798.

Therefore, it is now for this court to determine whether Defendant has met its burden in establishing the applicability of the discretionary function exception to the BIA's approval and subsequent reviews of Lease No. 6061.

### Discretionary Function Test

Following the Supreme Court's decision in *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Ninth

Circuit Court of Appeals adopted "a two-step test to determine whether the FTCA discretionary function exception applies in a given case." *Summers v. United States,* 905 F.2d 1212, 1214 (9th Cir.1990) (citation omitted). This two-step test consists of the following:

First, the court considers "whether the challenged action is a matter of choice for the acting employees: '[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow'" and the employee fails to follow that course of action. *Summers* 905 F.2d at 1214 (quoting *Berkovitz,* 486 U.S. at 536 [108 S.Ct. at 1958]). Second, "[i]f the challenged conduct does involve an element of judgment, the second step is to determine whether that judgment 'is of a kind that the discretionary function was designed to shield'" *Summers* at 1214 (quoting *Berkovitz,* 486 U.S. at 536 [108 S.Ct. at 1958]). "To be shielded the judgment must be grounded in social, economic, or political policy." *Id.* Under prong two of the *Summers* inquiry, for the discretionary function to apply, the United States must prove that each and every one of the alleged acts of negligence (1) involved an element of judgment and (2) the judgment was grounded in social, economic, or political policy.

*Prescott,* 959 F.2d at 798, 799.

Plaintiff contends that the discretionary function exception does not shield the United States from liability in the present case for three reasons. First, the BIA had a statutory duty to consider the safety of the premises before approving the speedway lease. Second, the BIA's approval of the lease was merely ministerial and not based on considerations of social, political, or economic policy. Third, after the lease was approved, the BIA had a non-discretionary duty to continue to assess spectator safety throughout the term of the lease.

### Judgment Requirement

In determining whether the discretionary function exception applies to the BIA's approval of the lease at issue in this case, the court must first consider "whether the action is a matter of choice for the acting employ-

ee.... Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States,* 486 U.S. at 536, 108 S.Ct. at 1958, 100 L.Ed.2d at 540, 541.

■ The statute pertaining to the approval of leases of tribal lands states in pertinent part:

(a) Any restricted Indian lands, whether tribally or individually owned, may be leased by the Indian owners, with the approval of the Secretary of the Interior, for public, religious, educational, recreational, residential, or business purposes,.... Prior to the approval of any lease or the extension of an existing lease ..., the Secretary of the Interior shall first satisfy himself that adequate consideration has been given to the relationship between the use of the leased lands and the use of neighboring lands; [and] the height, quality, and safety of any structures or facilities to be constructed on such lands....

25 U.S.C. § 415.

In addition to the above statute, there are regulations governing the leasing and permitting of trust land. 25 CFR § 162. However, with the exception of the requirement that "no lease shall be approved or granted at less than the present fair rental value," the regulations do not specify under what circumstances the Secretary should or should not approve a lease.

Plaintiff argues that the statutory language requiring that the Secretary "shall first satisfy himself that adequate consideration has been given to the ... safety of any structures or facilities to be constructed" imposes a mandatory duty on the Secretary to assess the safety of planned and existing structures on the premises. Plaintiff further contends that the language of the statute demands that at least some consideration be given to the safety of the premises before a lease can be approved.

The question for the court at this point, then, is whether the language of the statute, as Plaintiff suggests, "specifically prescribes a course of action for an employee to follow." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958,

100 L.Ed.2d at 540. If it is determined that the Secretary failed "to act in accord with a mandatory directive, the discretionary function exception does not apply." *Id.* 486 U.S. at 544, 108 S.Ct. at 1963, 100 L.Ed.2d at 546.

The *Berkovitz* case is instructive in clarifying what types of statutory or regulatory guidelines rise to the level of "mandatory directives." In *Berkovitz*, an infant contracted polio after ingesting a dose of oral vaccine for the disease. The complaint alleged that federal agencies failed to comply with specific, nondiscretionary regulations and directives which required them, prior to issuing a license, to obtain certain test data relating to the products compliance with regulatory standards, and required testing of all vaccine lots before release to the public. Because the regulations prescribed specific, mandatory directives, the complaint was sufficient to withstand a motion to dismiss based on the discretionary function exception. In so holding, the Court stated:

> ... if the policies and programs formulated by the [agency] allow room for implementing officials to make independent policy judgments, the discretionary function exception protects the acts taken by those officials in the exercise of this discretion. (citation omitted). The discretionary function exception, however, does not apply if the acts complained of do not involve the permissible exercise of policy discretion.

*Id.* 486 U.S. at 546, 108 S.Ct. at 1964, 100 L.Ed.2d at 547.

In a similar vein, the BIA has the discretion to approve or not approve leases submitted by the tribe or tribal entities. Without question it is a matter of judgment for the Secretary to decide whether such approval should be granted based on the information he has before him. However, there are provisions in the statute pertaining to the approval process which require that certain steps be taken by the Secretary before any decision can be made. The question is whether the requirement in the statute that the Secretary "satisfy himself that adequate consideration has been given ..." rises to the level of a mandatory directive.

In this case, the statute refers only to structures or facilities "to be constructed." Nothing in the statute requires the Secretary or any other federal agency to consider in any way structures or facilities already existing on the premises. The statute also does not require the Secretary or any other federal agency to necessarily assess the safety of planned structures. Furthermore, neither the statute nor any applicable regulations purport to define what constitutes "satisfaction" or "adequate consideration." Nor do they state who must give "adequate consideration" to safety. Consequently, the court finds that the statute allows wide judgment on the part of the Secretary to determine when he is satisfied, what constitutes "adequate consideration" and who will be responsible for giving "adequate consideration."

Plaintiff also focuses on the word "shall" as an indication of a mandatory directive. However, this language places an obligation upon the Secretary to do nothing more than subjectively "satisfy himself" that someone has given adequate consideration to the safety of planned structures. It does not obligate the Secretary or anyone in particular to assess the safety of the premises or to give some consideration to safety.

In *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018 (9th Cir.1989), it was held that a specific and mandatory regulation or statute is one "which creates clear duties incumbent upon the governmental actors. A general statutory duty to promote safety, ... would not be sufficient." *Id.* at 1026.

The statute at issue in this case speaks only of the Secretary satisfying himself concerning the safety of structures to be built on the leased property. Even if the statute had particularly stated that he must satisfy himself concerning existing structures on the premises, the statute does not give any guidance whatsoever as to what the Secretary should do in that regard. It does not require an expert's analysis, it does not require inspections, it does not require the gathering of any data. Unlike the regulations at issue in *Berkovitz*, Plaintiff can point to no language in any regulation or statute which specifically directs the Secretary to do anything concerning his "satisfying himself" regarding safety. Therefore, the statute does not mandate

clear duties upon the Secretary but allows him broad discretion in "satisfying himself" that "adequate consideration" has been given to safety.

### Social, Economic, or Political Policy Requirement

Having determined that the challenged conduct does involve an element of judgment, the court must now determine whether that judgment is grounded in social, economic, or political policy. *Summers v. United States,* 905 F.2d 1212, 1214 (9th Cir.1990).

In *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court held:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and whether they are susceptible to policy analysis.

*Id.* 499 U.S. at ——, 111 S.Ct. at 1274–75, 113 L.Ed.2d at 348. Here, 25 U.S.C. § 415 granted the Secretary broad discretion to determine when he is satisfied, what constitutes adequate consideration and who must give consideration to the safety of structures or other facilities to be constructed on the leased premises.

Furthermore, the BIA's exercise of discretion is unquestionably grounded in policy considerations relating to Indian Self–Determination. A relevant statement of Congressional findings included in the Indian Self–Determination and Education Assistance Act of 1975 states:

> (1) the prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people and their communities by depriving Indians of the full opportunity to develop leadership skills crucial to the realization of self-government, and has denied to the Indian people an effective voice in the planning and implementation of programs for the benefit of Indians which are responsive to the true needs of Indian communities; ....

25 U.S.C. § 450.

The United States has provided the court with many affidavits stating that the BIA approved the leases by the tribes because of the policy of Indian Self–Determination. In the case of Lease No. 6061, the Tribes negotiated the terms of the lease and the amount of consideration the Tribes would receive. Only after the negotiations were complete, and the Tribal council formally recommended that the lease be granted, was the lease submitted to the BIA for review. This is in keeping with the underlying political and social policies of allowing the Tribes to gain experience in handling and negotiating business transactions relating to Tribal resources. The BIA also made sure that the lease contained risk-shifting clauses to allow the Tribes to lease the land without the economic burdens of an initial capital outlay or the necessity of procuring special expertise for the management or control of diverse enterprises.

Therefore, the court concludes that the BIA's exercise of discretion in the approval of Lease No. 6061 was grounded in the federal policy of promoting the political and economic autonomy of the tribes.

### Susceptibility to Policy Analysis

Plaintiff maintains that the BIA's approval of the lease was a mere ministerial or clerical act as opposed to an exercise of true discretion. However, as was made clear in *Gaubert,*

> A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policy-making or planning functions. Day-to-day management ... regularly require judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level. "[I]t is the nature of the

conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660.

*Gaubert,* —— U.S. at ——, 111 S.Ct. at 1275, 113 L.Ed.2d at 348.

■ The Ninth Circuit has rejected the argument that "the discretionary function exception cannot apply in the absence of a 'conscious decision.'" *Kennewick,* 880 F.2d at 1028. "The relevant question is not whether an explicit balancing is proved, but whether the decision is susceptible to policy analysis." *Id.* (citations omitted). Consequently, whether the BIA failed to actually balance economic, social, and political concerns in reaching its decision is irrelevant.

Therefore, at the approval stage the BIA was not subject to any specific, mandatory directives derived from regulations or statutes, and all decisions regarding the lease in question were subject to the Secretary's subjective discretion grounded in the policy of Indian Self–Determination.

### Lease Monitoring

Plaintiff also alleges that the government undertook a duty to check the lease for compliance during the term of the lease. Plaintiff further alleges that the government failed to properly conduct these compliance checks and therefore failed to discover the allegedly inadequate safety barricades at the speedway. Though the BIA did attempt to monitor leases it had approved, it prioritized such monitoring based upon agency resources. Kaudy Deposition, p. 85, line 19—p. 93, line 11. Furthermore, the BIA was under no statutory or regulatory obligation to conduct such monitoring. In the absence of any mandatory statute, regulation or policy prescribing whether, when, or how the BIA should monitor leases, the decision not to monitor the lease at issue must be considered an entirely discretionary act.

In *West v. FAA,* 830 F.2d 1044 (9th Cir. 1987), FAA employees responsible for establishing departure procedures in a valley surrounded by mountains, used "their own best judgment in deciding what tests were required before the specific procedures were put into effect." *Id.* at 1048. There were no FAA regulations in effect to guide the FAA employees in their decision, and there were "few guidelines given to help in establishing any part of the departure procedures." *Id.* Consequently, the court found that the decisions of the FAA employees as to what was necessary for establishing a safe departure procedure was rooted in social and economic policy considerations. "Practical considerations such as staffing and funding are policy decisions excepted under the discretionary function exception." *Id.*

Similarly, the BIA employees at the Flathead Agency used their best judgment in deciding which leases to monitor. Accordingly, the actions of the BIA agents concerning lease compliance are permissible exercises of discretion grounded in economic considerations and, therefore, exempt from suit under the FTCA.

Plaintiff relies on *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) to support its position that the BIA undertook a non-discretionary duty to monitor the lease for compliance. In that case, a barge ran aground allegedly due to the Coast Guard's negligent operation of a lighthouse. The Supreme Court ruled that "once [the government] exercised its discretion to operate a lighthouse ... and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order.... *Id.* 350 U.S. at 69, 76 S.Ct. at 126–27.

The present case is easily distinguishable from *Indian Towing* because the BIA never undertook a duty to inspect the speedway. On the contrary, the BIA determined that it did not have the expertise to inspect the lease and delegated the responsibility of safety to the lessee under the terms of the lease. This decision, along with any decision not to inspect the speedway during the term of the lease, falls within the discretionary function exception because it represents a policy determination of the best way to accommodate the BIA's goals of fostering Tribal independence, promoting economic development of

the Tribes, and allocating the BIA's limited resources.

Additionally, Plaintiff contends that the BIA's failure to take any action when the lease term expired in January of 1986 constitutes a negligent failure to comply with the lease approval regulations. However, the government's failure in this regard is merely indicative of the BIA's choice not to monitor the lease. Because the BIA's decision not to monitor the lease has already been shown to be a discretionary function rooted in policy considerations, the BIA's failure to acknowledge the expiration of the lease is not actionable.

### Effect of State Law

■ Finally, as set forth at the outset of this discussion, Plaintiff contends that concepts of duty and negligence under Montana law should be controlling in this case. However, "the issue of negligence is not relevant to the discretionary function inquiry." *General Public Utilities Corp. v. United States,* 745 F.2d 239 (3rd Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985). The exception contemplates "both negligent and wrongful acts in the exercise of discretion.... The exercise of discretion could not be abused without negligence or a wrongful act." *Dalehite v. United States,* 346 U.S. 15, 33, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953). When enacting the exception, "Congress exercised care to protect the Government from claims, however negligently caused, that affected governmental functions." *Id.* at 32, 73 S.Ct. at 966.

Therefore, it is irrelevant here whether the BIA or its employees were negligent under state law in approving the lease or in failing to take such action as Plaintiff believes was necessary. "When the conduct at issue involves the exercise of discretion by a government agency or employee, § 2680(a) preserves the governmental immunity 'whether or not the discretion involved be abused.'" *In Re Consolidated United States Atmospheric Testing Litigation,* 820 F.2d 982, 996 (9th Cir.1987) quoting *Allen v. United States,* 816 F.2d 1417 (10th Cir.1987).

Furthermore, the discretionary function exception applies to acts of omission as well as commission since the FTCA, by its terms,

also protects the "failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a). Thus, to the extent that Plaintiff contends that the government failed to take steps he considers "adequate"—his claim likewise fails.

### Conclusion

Based on the foregoing analysis, the court finds that Defendant has met its burden in proving that each of the government's allegedly negligent acts or omissions claimed by Plaintiff involved an element of judgment and that such judgment was grounded in social, economic, or political policy. Therefore, because the acts or omissions complained of are based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, the Plaintiff's suit is barred by the discretionary function exception of 28 U.S.C. § 2680(a).

Accordingly,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED. Judgment shall enter accordingly. The parties shall pay their own costs of suit.