Susan **BAKER**, individually and as surviving mother of Sarah Baker, deceased; Jesse Bishop, individually, Plaintiffs,

v.

**SAN CARLOS IRRIGATION PROJECT,** an agency/subsidiary of the Bureau of Indian Affairs, a division of the Department of Interior, United States Federal Government, Defendants.

No. CIV. 00–2380PHX–SRB.

United States District Court, D. Arizona.

Dec. 13, 2001.

Charles Moulton Brewer, John B. Brewer, Charles M. Brewer Ltd., Phoenix, AZ, for plaintiffs.

Martin Mathers, Gage & Mathers Ltd., Phoenix, AZ, for Jesse Bishop.

Jill Dahlmann Rosa, U.S. Dept. of Justice, Torts Branch Aviation & Admiralty, Washington, DC, John Robert Mayfield, U.S. Attorney's Office, Phoenix, AZ, for defendants.

## ORDER

BOLTON, District Judge.

This matter comes before the court on the Motion of Defendant United States of America to dismiss the complaint, or, in the alternative, for summary judgment (Docs. 3–1 and 3–2) and the Plaintiffs' Motion requesting a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure (Doc. 13–1). On September 10, 2001, the court heard oral argument and took these motions under advisement.

As an initial matter, the Defendant argues that the only proper Defendant in a Federal Tort Claims Act (FTCA) case is the United States of America and that the San Carlos Irrigation Project, the Bureau of Indian Affairs, and the Department of the Interior must be dismissed as federal defendants. It is clear that a plaintiff may only bring suit against the United States in an FTCA action. *Kennedy v. United States Postal Serv.,* 145 F.3d 1077, 1078 (9th Cir.1998); *see also* 28 U.S.C. § 2679(a) (1994). Furthermore, the Parties' July 12, 2001 Proposed Case Management Plan represents that "Plaintiffs will voluntarily dismiss SAN CARLOS IRRIGATION PROJECT, the BUREAU OF INDIAN AFFAIRS, the DEPARTMENT OF INTERIOR, and the UNITED STATES FEDERAL GOVERNMENT, and recommends that the case be re-captioned: *Baker et al. v. United States of America.*" Thus, the court finds that the United States of America is the only prop-er defendant and considers the Motion to Dismiss or Motion for Summary Judgment as a motion asserted only by Defendant United States of America.

## I. BACKGROUND

On January 1, 1998, pilot Robert B. Martin rented a small airplane and operated the airplane during a flight with Plaintiff's decedent, Sarah Baker, and Plaintiff Jesse Bishop. Mr. Martin flew the airplane over and above the Maricopa County Floodway, located approximately four miles south of the Chandler Airpark. At an altitude of approximately 75 to 100 feet, the aircraft collided with electrical lines, causing the aircraft to crash to the ground. Plaintiff's decedent, Sarah Baker, and Mr. Martin were killed in the crash, and Mr. Bishop was severely injured. The power lines which were struck by the airplane were constructed and maintained by the San Carlos Irrigation Project (SCIP). The SCIP provides electric power to homes and businesses on the Gila River and San Carlos Indian Reservations and to neighboring communities. The SCIP is administered by the Bureau of Indian Affairs which is located within the United States Department of the Interior.

The Plaintiffs allege that the Defendant "had an absolute duty to provide adequate markings (orange balls) and/or warning devices" on the electric lines which the Plaintiffs' aircraft struck because the SCIP had actual knowledge that these same electrical lines had been struck nine years earlier. The Plaintiffs further contend that the Defendant's failure to mark the electrical lines created an inherently dangerous condition and gives rise to liability for the damages suffered by the Plaintiffs. The Plaintiffs assert their claims under the FTCA. For the purposes of this motion, the Defendant accepts as true the factual allegations in the Plaintiffs' complaint.

The Defendant argues that even if the Plaintiffs' allegations are true, subject matter jurisdiction is lacking because this case falls under the discretionary function exception of the FTCA and therefore, the United States has not waived sovereign immunity.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Plaintiffs' Rule 56(f) Motion

■ The Plaintiffs request a "reasonable continuance" of the consideration of the present motion to allow the Plaintiffs an opportunity to conduct and complete discovery. Rule 56(f) of the Federal Rules of Civil Procedure permits the court to order a continuance if it appears "from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f). Under Rule 56(f), the party seeking a continuance bears the burden of setting forth the specific facts it expects to uncover through further discovery. *See Harris v. Duty Free Shoppers Ltd. P'ship,* 940 F.2d 1272, 1276 (9th Cir.1991); *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986). The Plaintiffs contend that further discovery is necessary to determine "whether or not the SCIP had an obligation, pursuant to industry standards and/or procedural guidelines, to place warning devices and/or orange balls on their electrical lines after receiving *actual notice that an aircraft struck the exact electrical transmission lines in 1989,* nine (9) years prior to the subject accident." Although the facts surrounding the Defendant's duties and obligations would impact an ultimate determination on the merits, the information which the Plaintiffs hope to obtain through further discovery is not relevant to the issue of whether the discretionary function exception applies and therefore, does not include facts essential to the Plaintiffs' opposition of the current motion. Furthermore, the Plaintiffs have not identified any additional facts or evidence they believe will be uncovered during further discovery which bears on the discretionary function issue. Thus, the court finds that a Rule 56(f) continuance is not appropriate.

### B. Defendant's Motion to Dismiss

■ The Defendant moves to dismiss this complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, moves for summary judgment. The issue of whether the United States has waived sovereign immunity for a particular type of suit is properly posed as a question of subject matter jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988); *see also Reed v. United States,* 231 F.3d 501, 504 (9th Cir.2000) (finding that when the discretionary function exception applies, the court lacks subject matter jurisdiction). "Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy,* 850 F.2d at 560; *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983) (finding that the district court's consideration of evidence outside the pleadings did not convert the defendant's motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment). Although the Defendant has captioned the present motion to dismiss with an alternative summary judgment motion, the Defendant's argument focuses solely on the absence of subject matter jurisdiction based on the discretionary function exception to the FTCA. Because the heart of the current inquiry is a determination of whether sub-

ject matter jurisdiction exists, the court proceeds to consider this motion as a motion to dismiss.

■ The United States is subject to suit only "to the extent that it has waived its sovereign immunity." *Reed,* 231 F.3d at 504 (citing *Blackburn v. United States,* 100 F.3d 1426, 1429 (9th Cir.1996)). The FTCA establishes a limited waiver of the government's sovereign immunity for:

> civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (Supp.1999). However, Congress has carved out several exceptions to § 1346(b)(1), *see* 28 U.S.C. § 2680 (1994), including an exception for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a).

■ The discretionary function exception " 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.' " *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988) (quoting *United States v. Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2761–62, 81 L.Ed.2d 660 (1984)). Furthermore, one purpose of the exception is to " 'prevent judicial 'second-guessing' of leg-

islative and administrative decisions grounded in social, economic, and political policy.' " *GATX/Airlog Co. v. United States,* 234 F.3d 1089, 1094 (9th Cir.2000) (quoting *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267 [1273], 113 L.Ed.2d 335 (1991)). The analysis of whether the discretionary function applies centers on " 'the nature of the conduct, rather than the status of the actor.' " *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958 (quoting *Varig Airlines,* 467 U.S. at 808, 104 S.Ct. at 2761–62). The United States bears the burden of proving that the discretionary function exception applies. *Kelly v. United States,* 241 F.3d 755, 760 (9th Cir.2001) (citing *Reed,* 231 F.3d at 503).

■ In *Berkovitz,* the United States Supreme Court established a two-part test for determining whether the government is performing a discretionary function. As an initial step, "a court must first consider whether the action is a matter of choice for the acting employee" because "conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958; *see also GATX/Airlog Co.,* 234 F.3d at 1094. Thus, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958; *see also GATX/Airlog Co.,* 234 F.3d at 1094. The standards set forth by federal statute, regulation, or policy will bar the application of the discretionary function exception only if such standards are "both specific and mandatory." *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1027 (9th Cir.1989).

■ Second, the challenged conduct must involve a judgment "of the kind that

the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959. A challenged decision within the discretionary function exception " 'need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis.' " *GATX/Airlog*, 234 F.3d at 1094; *Vickers v. United States*, 228 F.3d 944, 950–51 (9th Cir.2000); *see also Kennewick*, 880 F.2d at 1028 (rejecting the argument that the discretionary function exception applies only if the government proves that it considered policy factors and "made a conscious decision on the basis of them"). When established government policy "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. at 1274.

■ The court first considers whether the Defendant failed to comply with a mandatory federal regulation or policy. Upon review of the applicable statute, federal regulations, and the Operations Manual for Electric and Customer Services for the SCIP, the court finds that there are no federal directives mandating that the electrical wires at issue must have been marked. The Defendant represents that the Bureau of Indian Affairs (BIA) could have exercised its discretion and decided to follow the guidelines issued by the Federal Aviation Administration (FAA) to determine that the electrical lines were not an obstruction to air navigation.

The FAA is charged with developing "plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace." 49 U.S.C. § 40103(b)(1). Furthermore, the Administrator of the FAA "shall prescribe air traffic regulations on the flight of aircraft (including regulations on safe altitudes)" to

protect aircraft and prevent collisions between aircraft and other objects. *Id.* § 40103(b)(2). Under the FAA's standards, an object is an obstruction to air navigation if it stands at a height of 200 feet above ground level and within three nautical miles of an airport. 14 C.F.R. § 77.23(a)(2) (1998). The height at which an object becomes an obstruction "increases in the proportion of 100 feet for each additional nautical mile of distance from the airport up to a maximum of 500 feet." *Id.* According to the FAA regulations, an object located at three nautical miles (about 3.5 miles) or more from the airport is not considered an obstruction unless it is at least 200 feet above ground level. Here, the Plaintiffs allege that their aircraft struck power lines located four miles from the airport at approximately 75–100 feet above ground level. Thus, under the FAA's standards, the BIA was not mandated to treat the electrical wires as obstructions to air traffic.

The Plaintiffs, however, argue that there is a federal regulation which mandates that the SCIP mark the power lines at issue and that the SCIP violated this specific directive. The directive identified by the Plaintiffs is 25 C.F.R. § 175.24(b), which governs Indian Electric Power Utilities and provides: "A utility subject to this part shall: ... (b) Construct and operate facilities in accordance with accepted industry practice." 25 C.F.R. § 175.24(b) (1997). To show that the Defendant violated this regulation, the Plaintiffs present evidence that in 1989, another aircraft struck the electric lines at the same location where Mr. Martin had impacted the power lines. In addition, as evidence that the Defendant failed to conform with accepted industry practice, the Plaintiffs proffer the affidavit of engineer Robert E. Witter, who opined that:

As a result of the actual and constructive knowledge and notice of aircraft

travel in and around the subject area, and consistent with the previous accident involving Travis Wayne Palmer in February of 1989, SCIP had a duty to place markings, warning devices, and/or orange balls on the subject electric distribution lines at the subject accident site .... By placing the warning devices and/or orange balls, SCIP would have conformed to the accepted industry practices when having previous knowledge and/or notice of aircraft line strikes.

In *Kelly v. United States,* 241 F.3d 755, 760 (9th Cir.2001), the United States Court of Appeals for the Ninth Circuit recently considered whether the United States Forest Service was immune from liability under the FTCA when facing allegations that it had failed to require its contract pilots to undergo a specific type of crew resource management (CRM) training. After considering the policies related to the training required for the pilots, the *Kelly* court stated: "We have repeatedly held that a general regulation or policy, like the Accident Plan here, does not remove discretion unless it specifically prescribes a course of conduct." *Id.* at 761. In rejecting the plaintiffs' argument that the government had violated a mandatory directive, the *Kelly* court reasoned: "First and foremost, the Accident Plan provision *does not mention* CRM training, let alone require a specific type of CRM training." *Id.* at 760 (emphasis in original).

In the present case, the regulation cited by the Plaintiffs, like the policies analyzed in *Kelly,* is not sufficiently "specific" or "mandatory" to be considered a directive which precludes the BIA from making a choice or a judgment. 25 C.F.R. § 175.24(b) does not mention any guidelines for dealing with electrical wires or for placing warning signals on air obstructions. Furthermore, the regulations governing the utility at issue do not specify the source from which "accepted industry standards" must be extracted. The BIA could have exercised its discretion and decided to follow the FAA's standards as indicia of "accepted industry practice." The regulations and policies governing the utility at issue, including the regulation relied upon by the Plaintiffs, fail to establish a specific, mandatory directive which would have compelled the BIA to mark all electrical wires that had previously been involved in an aircraft accident.

The Plaintiffs also contend that the absence of a specific directive in the SCIP's Operations Manual should not weigh in favor of the Defendant's argument because the policies in the Operations Manual are established by only a single individual, the Area Director. The Plaintiffs argue that "[i]f an issue is not addressed by the sole individual, at his whim, in the operations manual, than [sic] SCIP does not need to contend with it, nor does the SCIP have to comply with `it." Federal regulations clearly vest authority in the Area Director to "establish an operations manual for the administration of the utility" and to "amend the operations manual as needed." 25 C.F.R. § 175.5(a). The decision to vest this policy-making authority in one individual properly lies in the discretion of the appropriate agency, and this court will not second-guess the authority vested in the Area Director. The absence of any specific directives in the operations manual weighs in favor of the Defendant's argument despite the fact that only one individual has the authority to establish and amend the manual.

■ Second, the court must consider whether the failure to mark the electrical wires is a decision which is susceptible to policy analysis. Because the regulations governing the SCIP permit it to exercise its discretion regarding the marking of power lines, it is presumed that the

agency grounded their decision in policy when it exercised its discretion. *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. Other courts have found that the decision regarding whether to mark power wires is the type of decision expected to be "grounded in social, economic, and political policy." *See Mitchell v. United States,* 787 F.2d 466, 468 (9th Cir.1986) (finding that the choice of not marking ground wires below 500 feet in conformance with FAA standards was protected by the discretionary function exception); *Reminga v. United States,* 631 F.2d 449, 458 (6th Cir.1980) (finding that the agency's failure to mark guy wires for the safety of aircraft fit within the discretionary function exception); *Mellott v. United States,* 808 F.Supp. 746, 750 (D.Mont.1992) (finding that the decision not to attach warning devices on guy wires for the benefit of aviators even though warning devices were in place for the benefit of ground traffic falls within the discretionary function exception). Furthermore, the Defendant points out that the decision regarding whether to mark electrical wires requires consideration of competing issues such as constraints on pilot action, the rights of landowners, employee and public safety, allocation of limited resources, the impact of the agency's actions on its relationship with local residents, environmental/aesthetic concerns, and the agency's prioritization of its projects based on its particular mission. These social, political, and policy concerns related to the challenged decision at issue demonstrate that this decision is the type of discretionary decision that the exception was designed to shield. Although there is no evidence that the agency actually balanced policy considerations in deciding not to mark the electrical wires, the agency need not have "made a conscious decision" based on policy factors to fall within the discretionary function exception. *Kennewick,* 880 F.2d at 1028.

The Plaintiffs argue that the decision not to warn of a known hazard is not the type of policy-based decision the discretionary function exception was designed to shield. The Plaintiffs rely on three cases to support their argument that the challenged decision is not susceptible to policy analysis: *Sutton v. Earles,* 26 F.3d 903, 910 (9th Cir.1994), *Summers v. United States,* 905 F.2d 1212 (9th Cir.1990), and *Seyler v. United States,* 832 F.2d 120 (9th Cir.1987). The Plaintiffs' argument is misplaced. Consistent with this court's finding, the *Sutton* court stated: "We can assume without deciding that decisions of the Coast Guard not to mark existing obstructions normally would fall within the discretionary function exception." *Sutton,* 26 F.3d at 911. However, after analyzing the specific facts before it, the *Sutton* court concluded that "[t]he decision of the Navy not to warn boaters of an obstruction to navigation that the Navy itself placed in navigable waters that the Navy knew to be traversed by pleasure boat traffic" is not the type of decision that is protected by the discretionary function exception. *Id.* In *Sutton,* the agency failed to warn of an obstruction the Navy had placed in navigable waters where boat traffic was expected and permitted. Similarly, in both *Summers* and *Seyler,* the plaintiffs in both cases were injured in areas where they were permitted to traverse and where the government could reasonably expect the public to traverse. *See Summers,* 905 F.2d at 1216–17 (finding that the discretionary function exception did not bar a suit against the National Park Service when it established a policy allowing fires within certain fire rings on a public beach but failed to warn barefoot visitors of the danger of hot coals within the fire rings); *Seyler,* 832 F.2d at 122 (finding that the discretionary function exception did not apply when the government failed to erect

speed limit signs on "a two-lane, paved public highway").

The facts of the present case are distinguishable from the facts of *Sutton, Summers,* and *Seyler* because the evidence shows that Mr. Martin was flying the aircraft at a lower altitude than is deemed safe by federal regulations. The Defendant represents that Mr. Martin was flying over a rural area at an illegally low altitude, and the Plaintiffs do not deny this representation. Federal regulations provide that the minimum safe altitude over a rural area is 500 feet above ground level. 14 C.F.R. § 91.119 (1998). Even the FAA accident/incident data report provided by the Plaintiffs show that for both the accidents involving the electrical wires at issue, the phase of the flight at the time of the accident was an "unauth low level." Even if the BIA had notice that some pilots were flying at altitudes low enough to strike the electrical wires involved in this case, it could reasonably expect that most pilots were flying in conformance with federal regulations and choose not to install warning signals on these electrical wires. The BIA could have determined that the minimum altitude regulations adequately ensure the safety of air travelers when balanced against the alternative of placing orange balls or other warning signals on all the electrical wires erected. Thus, the decision regarding whether to mark certain electrical wires is the type of decision susceptible to social, political, and policy considerations.

The United States is not like any other defendant. Sovereign immunity for this type of case must be waived, and notice of the occurrence of a previous airplane accident at the same location of this accident does not effect a waiver of sovereign immunity. Thus, the present suit may not proceed against the United States.

IT IS ORDERED denying the Plaintiffs' Motion for a continuance pursuant to Rule 56(f) (Doc. 13–1).

IT IS FURTHER ORDERED dismissing the complaint as to Defendants San Carlos Irrigation Project, Bureau of Indian Affairs, and Department of the Interior (Doc. 3).

IT IS FURTHER ORDERED granting the Motion of Defendant United States of America to Dismiss the complaint (Doc. 3–1) and denying the Defendant's Motion for Summary Judgment as moot (Doc. 3–2).