Felix VALDEZ, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 93–17236.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1995.

Decided June 8, 1995.

David H. Greenberg and Jennifer Van Der Heide, Greenberg & Simon, Beverly Hills, CA, for plaintiff-appellant.

William L. Shipley, Asst. U.S. Atty., Fresno, CA, for defendant-appellee.

Before: FLOYD R. GIBSON,* HUG and FERGUSON, Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Felix Valdez appeals the district court's order granting the Government's motion to dismiss his claim for lack of subject matter jurisdiction. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 (1988), and we affirm.

## I. BACKGROUND

On July 25, 1991, Felix Valdez plummeted ninety feet down the face of the Ella Falls waterfall in Kings Canyon National Park. As a result, Valdez was rendered a quadriplegic. The facts surrounding this accident are undisputed. Kings Canyon National Park is owned by the United States and operated by the National Park Service ("NPS") of the Department of the Interior. Valdez, who was employed by a concessionaire operating within the park, went hiking that afternoon with three companions along the Sunset Trail. The trail led them to the base of Ella Falls, where they rested for about half an hour. During the hike and the rest at the base of the falls, Valdez drank at least three beers. After resting, they left the trail and climbed approximately ninety feet up the left side of the falls. Upon reaching the summit, they remained there for approximately half an hour before crossing the creek at the top of the falls. As Valdez attempted to descend down the right side of the falls, he lost his footing, fell backward into the stream, and tumbled to the base of the falls.

On August 23, 1991, Valdez filed an administrative claim with the United States Department of the Interior seeking $60,000,-000.00 in compensatory damages for personal injuries suffered as the result of the negligence of the NPS. After the Department of the Interior denied his claim, Valdez filed suit in the United States District Court for the Eastern District of California seeking damages against the United States pursuant to the Federal Tort Claims Act ("FTCA") for the creation of known dangerous conditions by: (1) negligently designing and maintaining a trail in a way that appeared to lead the trail onto the rock bed of the waterfall; (2) having inadequate and/or insufficient warning signs; (3) failing to have guard rails or to otherwise make the area safe; (4) failing to erect barriers to keep people from attempting to cross the stream; and (5) failing to properly warn the public of potential hazards through educational materials, brochures, signs, pamphlets and the like.

The Government moved to dismiss this action for lack of subject matter jurisdiction on the basis that the challenged conduct falls within the discretionary conduct exception to the FTCA. The district court granted the Government's motion and dismissed Valdez's

---

* The Honorable Floyd R. Gibson, Senior Judge for the Eighth Circuit Court of Appeals, sitting by designation.

claim pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Valdez appeals.

## II. DISCUSSION

 A party may bring an action against the United States only to the extent that the government waives its sovereign immunity. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). The FTCA represent a limited waiver of that sovereign immunity for tort claims arising out of the conduct of a government employee acting within the scope of his or her employment. 28 U.S.C. § 1346(b).[1] That waiver, however, is limited by the discretionary function exception, which precludes liability under the FTCA for claims "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

██ In order to determine whether the challenged conduct falls under the discretionary function exception, we must engage in a two-step analysis. First, we ask whether the challenged actions involve "an element of judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quotation omitted). That requirement is not satisfied if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958–59, 100

L.Ed.2d 531 (1988). Once the element of choice or judgment has been established, we must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. at 1273 (quotation omitted). More specifically, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323, 111 S.Ct. at 1274 (quotation omitted).

 While the plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, *Prescott v. United States,* 973 F.2d 696, 701 (9th Cir.1992), "the United States bears the ultimate burden of proving the applicability of the discretionary function exception." *Id.* at 702. We review the district court's determination of subject matter jurisdiction under the discretionary function exception de novo. *Richardson v. United States,* 943 F.2d 1107, 1110 (9th Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).

### A. Discretion

 Valdez argues first that the district court erred in determining that the challenged conduct was discretionary. Valdez relies on the NPS's *Loss Control Management Guidelines*[2] and *Management Policies,*[3] which he claims demonstrate that there were mandatory regulations in place prescribing a course of action for NPS employees to follow. He also points to testimony by various NPS employees that these regulations were mandatory as evidence that the

---

1. Pursuant to the FTCA, the United States consents to be sued:

 [F]or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

2. "G *Educational Materials, Signs, Programs*—all areas will provide any special materials, signs, and programs to alert the public of potential dangers.

1. Brochures specific to the area should contain safety messages that direct attention to special hazards or attractions that could be potentially hazardous to the visitor."

3. Chapter 8:6:

 Where it would be inconsistent with congressionally designated purposes and mandates or where otherwise not practicable to make physical changes, efforts will be made to provide for persons' safety and health through other controls, including closures, guarding, signing, or other forms of education.

NPS lacked any choice or judgment over the challenged conduct.

We disagree. While the said policy guidelines certainly outline general policy goals regarding visitor safety, the means by which NPS employees meet these goals necessarily involves an exercise of discretion. These guidelines can be considered mandatory only in the larger sense that they set forth broad policy goals attainable only by the exercise of discretionary decisions. We are guided by our prior decision in *Childers v. United States*, 40 F.3d 973 (9th Cir.1994), in which the parents of an eleven-year-old boy who fell to his death in Yellowstone National Park brought a similar claim under the FTCA. In that decision, we concluded that the NPS's decisions regarding warnings, trail maintenance, and trail closures were discretionary. *Id.* at 976. "[The NPS's] decisions [regarding warnings, trail maintenance, and trail closure] are policy-based, requiring them to balance access with safety, and take into account conservation and resources in designing area plans and making individual trail determinations." *Id.*

We similarly believe that the Management Guidelines' broad mandate to warn the public of "special hazards" through educational materials, brochures, pamphlets, and the like necessarily encompasses an element of discretion in identifying such hazards. Because the NPS cannot apprise the public of every potential danger posed by every feature of the Park, a degree of judgment is required in order to determine which hazards require an explicit warning and which hazards speak for themselves.

### B. Considerations of Public Policy

■ Valdez argues alternatively that safety management concerns are not "decisions based on considerations of public policy" for purposes of the discretionary function exception. *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274. He relies on a line of cases exemplified by *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990). In *Summers*, this Court concluded that the NPS's failure to warn visitors of the potential danger of stepping on hot coals left by fire rings permitted on a public beach was not the type of judgment

"grounded in social, economic, or political policy" that the discretionary function exception is intended to insulate. *Id.* at 1215.

We believe Valdez reads *Summers* too broadly. Our conclusion in *Summers* was based on the fact that there was "no evidence ... that NPS's failure to post warnings ... was the result of a decision reflecting the competing considerations of the Service's sign policy." *Id.* We agree that " 'where the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees.' " *Id.* (quoting *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir. 1987)). Such is not the case here.

Here, the challenged conduct clearly implicates a choice between the competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards. As we concluded in *Childers*, "Park rangers used their discretion to balance, within the constraints of the resources available to them, a statutory mandate to provide access with the goal of public safety. This decision was precisely the kind the discretionary function exception was intended to immunize from suit." *Childers*, 40 F.3d at 976. We believe this logic is applicable to the case at hand. *See also Lesoeur v. United States*, 21 F.3d 965, 970 (9th Cir.1994).

The related decision regarding which natural hazards should be brought to the attention of the public through pamphlets or brochures similarly implicates public policy concerns. Faced with limited resources and unlimited natural hazards, the NPS must make a public policy determination of which dangers are obvious and which dangers merit the special focus of a warning brochure or pamphlet. In addition, too many warning brochures and pamphlets would inevitably reduce the impact of the individual warnings on the public. In this case, therefore, the NPS must balance the goal of public safety against competing fiscal concerns as well as the danger of an overproliferation of warnings.

## III. CONCLUSION

For the aforementioned reasons, we AFFIRM the order of the district court.