Joshua SCHUYLER, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 96CV422 J AJB.

United States District Court,
S.D. California.

Sept. 8, 1997.

Kathryn. P. Cooney, Escondido, CA, Thomas J. Watt, Escondido, CA, for plaintiff.

Alan D. Bersin, San Diego, CA, Timothy C. Stutler, San Diego, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JONES, District Judge.

## I. BACKGROUND

This matter comes before the Court on defendant's motion for summary judgment. Plaintiff has filed an opposition to defendant's motion for summary judgment. Defendant the United States of America has filed a reply.

Plaintiff, Joshua Schuyler, filed this action against the United States under the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 1246(b), 2671 et seq. During an early morning (approximately 2:30 a.m.) brawl among several young people returning from Tijuana on or about July 7, 1994, at the San Ysidro Port of Entry, plaintiff was thrown over the guardrail of a three-story pedestrian ramp. The parties differ as to whether plaintiff was the initial aggressor, a point which is not relevant to this case. Nonetheless, plaintiff and his "drinking buddies" scuffled with another group of young people returning from Tijuana and plaintiff was thrown over the guardrail, falling 30 feet to the ground below. At his deposition, plaintiff testified that he went over the guardrail two to three feet from the ramp's west wall. See Exhibit 3 of Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment at deposition pages 88–89 and attached photograph.

Plaintiff contends his fall was caused by defendant's negligence in designing, constructing, and maintaining the pedestrian ramp from which he was thrown and has thus filed suit under the FTCA. Plaintiff seeks to hold defendant liable for his injuries on the theory that defendant negligently omitted to perform two acts:. (1) raise the guardrail four inches when it raised the surface of the ramp's deck by that amount (plaintiff's "guardrail height" claim); and (2) enclose the ramp with a fence (plaintiff's "fencing-in" claim).

The ramp from which plaintiff was thrown is connected to the west end of a pedestrian overpass spanning Interstate 5. The ramp and overpass were built in 1972. The State of California is responsible for maintaining and repairing the ramp, as well as providing security. Pursuant to a contract with the state, defendant maintains the lighting and drainage on the overpass and ramp, and removes trash and graffiti.

The east end of the pedestrian overpass runs through a federal facility. U.S. Customs, Immigration, and Agriculture officers work in the area beneath the overpass. As part of a 1992 project to upgrade the federal building at the San Ysidro Port of Entry, defendant decided to fence-in the overpass. According to defendant, an independent contractor, International Consulting Engineers (ICE), designed the project. Defendant maintains that the purpose of the fence was to protect those below from thrown debris and that it chose not to fence in the west ramp because the risk of harm from thrown debris was lower in that area.

During the design process, defendant decided to alter the ramp to make it wheelchair accessible in compliance with the ADA. Defendant hired a construction management firm, Holmes and Narver, to manage and supervise the construction. Soltek of San Diego was retained as the building contractor on the project.

As a result of the wheelchair accessibility construction, the height of the guardrail running along the ramp was lowered in certain areas. Apparently, the construction created a number of horizontal landings between the pedestrian ramp's wall and the inclined wheelchair lane, so that wheelchair users would have flat "landings" on which to rest while moving along the ramp. The guardrail

along the landing areas remained at the forty-two inch height, while the guardrail along the inclined wheelchair ramp decreased to a height of thirty-eight inches. This was because, in order to create the inclined wheelchair ramp the construction company hired by defendant had to lay down more cement, which effectively raised the ground surface level of the ramp, bringing it higher up along the guardrail.

Thus, when all was said and done, the guardrail rose only thirty-eight inches above the inclined areas, rather than the forty-two inches it had previously risen. Landings were placed only in certain locations along the ramp. Thus, in the landing areas, the guardrail height remained forty-two inches, but in those areas containing the newly built incline ramp, the guardrail only rose thirty-eight inches.

Plaintiff contends that, had defendant raised the guardrail level after the ADA compliance work, or enclosed the entire ramp with a fence, plaintiff's assailant would not have been able to hoist him those extra four inches, or at least would have had more trouble in tossing him over. Plaintiff contends that, under the 1988 and 1991 versions of the Uniform Building Code, defendant had a duty to maintain a minimum height standard of forty-two inches for guardrails.

Defendant's summary judgment motion is based on three grounds. First, defendant maintains that even if it did have a duty to maintain the guardrail at a height of forty-two inches, its failure to meet that standard at some points along the guardrail could not possibly have contributed to plaintiff's injuries, as plaintiff's deposition testimony indicates that the guardrail was forty-two inches high at the area from which plaintiff was thrown. Next, defendant contends that it is immune from liability to plaintiff under the discretionary function exception to the FTCA. Finally, defendants allege that because the designers and builders of the fence and wheelchair lane were independent contractors, defendant cannot be held liable for their negligence, if any.

## II. PLAINTIFF'S IN ARTFUL ATTEMPT TO EXPAND HIS CLAIMS THROUGH HIS OPPOSITION

In his opposition to defendant's summary judgment motion, plaintiff improperly attempts to add two new ways in which he believes the United States acted negligently: by failing to "provide adequate lighting in a known dangerous area"; and by failing to "provide adequate security in a known dangerous area." *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment at 2. Plaintiff's opposition contains numerous assertions and exhibits referring to the security and lighting on the pedestrian walkway. The Court will not consider any reference to security or lighting, as these claims were not properly raised in plaintiff's complaint, and he may not raise them without moving to file an amended complaint.

## III. MOTION FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT, IN GENERAL

The principal purpose of summary judgment is to provide a "just, speedy and inexpensive" alternative to trial where there is "no genuine issue as to any material fact." FED.R.CIV.P. 1, 56(c).[1] Upon a showing that there is no genuine issue of material fact as to particular claims, the Court may grant summary judgment in the party's favor "upon all or any part thereof." FED.R.CIV.P. 56(a), (b). A "material issue of fact" is a question which both: (1) must be answered to determine the rights of the parties under the substantive law;[2] and (2) must be an-

---

1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...."); *id.* at 327, 106 S.Ct. at 2554 ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'") (citations omitted).

2. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[T]he substantive law will identify which facts

swered by the jury.[3] A dispute is "genuine" only if "a jury applying [the substantive law's] evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* at 255, 106 S.Ct. at 2513. Accordingly, in deciding a motion for summary judgment, the Court will draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.*

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If the nonmovant will bear the burden of persuasion at trial, the movant does not discharge its initial burden simply by making a "conclusory assertion that the nonmoving party has no evidence," but must rather demonstrate the absence of a genuine issue by either (1) submitting proof that would negate an essential element of the nonmovant's claim or defense; or (2) showing the nonmovant's inability to produce sufficient admissible evidence at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); *id.* at 328, 106 S.Ct. at 2555 (White, J., concurring) ("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion.").

Proof submitted in support of or in opposition to a motion for summary judgment must be clearly reducible to admissible form at trial. Edward Brunet, SUMMARY JUDGMENT MATERIALS, 147 F.R.D. 647, 653–58 (1993); 10A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2721 at 40 (2d ed. 1983) ("The court may consider any material that would be admissible or usable at trial.").

Unless foundational or other evidentiary objections are timely made, however, even inadmissible evidence may be considered by the court and will support a judgment. *Faulkner v. Federation of Preschool and Community Educ. Centers, Inc.*, 564 F.2d 327, 328 (9th Cir.1977) (per curiam). The Court has no duty to consider proof not specifically directed to its attention. *Schneider v. TRW, Inc.*, 938 F.2d 986, 990 n. 2 (9th Cir.1991).

## B. THE LOCATION FROM WHICH PLAINTIFF WAS THROWN IS NOT A GENUINE ISSUE OF MATERIAL FACT

The parties' papers disagree as to the point on the pedestrian ramp from which plaintiff was thrown. The guardrail's height varies depending on the location along the ramp. If plaintiff was thrown from a "landing" area, the guardrail was forty-two inches high in the spot from which he was thrown. If plaintiff was thrown from an inclined spot, however, the guardrail would only have been thirty-eight inches high. Plaintiff maintains that defendant had a duty, under the Uniform Building Code, to maintain the height of any guardrail at forty-two inches. Assuming, arguendo, that defendant did have such a duty, the failure to meet the height requirement was not the cause of plaintiff's injuries if the place from which plaintiff was thrown was one of the flat landing areas, since those areas comply with the forty-two inch height requirement.

█ Here, although plaintiff's opposition attempts to transform the location of his fall into a genuine issue of material fact, the location from which he was thrown is actually not such an issue for purposes of summary judgment. In his sworn deposition testimony, plaintiff admitted that he was thrown from the ramp at a flat part, indicating a landing area on a photograph of the scene. *See* Exhibit 3 of Defendant's Memorandum of Points and Authorities in Support of Mo-

---

are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

3. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993) (whether facts could support a reasonable belief in the existence of probable cause or reasonable suspicion must be decided by the court and, as such, only underlying disputes about what these facts are go to the jury).

tion for Summary Judgment at 87–89 and photograph attached thereto. In his opposition to defendant's motion, plaintiff has attempted to back peddle by contradicting his own testimony. He attaches a number of declarations from himself and his friends suggesting that plaintiff landed at a certain spot on the pavement beneath the ramp, seemingly to suggest that plaintiff was thrown from a different spot. However, none of the declarations of plaintiff's friends state that plaintiff was thrown from any particular spot. *See* Declaration of Plaintiff Josh Schuyler, Declaration of Eli Howe, Declaration of Pyong So, and Declaration of Steven Ashton. Plaintiff's own declaration states that he has a "firm belief" that he was "pushed" over the railing at a spot different from that which he noted in his deposition testimony. *See* Declaration of Plaintiff Joshua Schuyler. As defendant's reply notes, however, a party opposing summary judgment cannot create a genuine issue of fact by contradicting or repudiating his own sworn deposition testimony. *See Lopez v. General Motors Corp.*, 697 F.2d 1328, 1333 (9th Cir. 1983); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir.1975).

In *Radobenko,* the court refused to permit appellant to create his own issue of fact by an affidavit contradicting his prior deposition testimony. *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985) (citing *Radobenko*, 520 F.2d at 544). In support of its decision, the court cited a Second Circuit case in which that court noted:

> [I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Radobenko*, 520 F.2d at 544 (citing *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)).

Plaintiff testified several times at his deposition that he was thrown from the "corner" of the ramp, at the "flat part." *See* Exhibit 3 to Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment. Plaintiff corroborated his testimony by marking on a photograph the spot where he was thrown from the ramp. The photograph is filed with defendant's motion papers as page 7 of Exhibit 3. Plaintiff attempts to contradict this deposition testimony through a declaration attached to his opposition. Unfortunately, however, plaintiff cannot create a genuine issue of material fact where none exists. Thus, plaintiff's declaration contradicting his prior deposition testimony does not raise a genuine issue of fact.

■ Likewise, the declarations of plaintiff's friends, attached to plaintiff's opposition, fail to create a genuine issue of material fact as to the location from which plaintiff was thrown. Just as a party who opposes a summary judgment motion may not contradict his sworn statements with his own declaration, he may not use somebody else's declaration for that purpose. *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264–65 (9th Cir.1993).

The declarations of plaintiff's friends do not state that they have actual knowledge of the spot from which plaintiff was thrown, or where he actually impacted the pavement. Rather, all plaintiff's friends seem to relate is a distant memory of where he ultimately came to rest after his fall. Extrapolating from this evidence, plaintiff puts the spot where he fell at a different place on the ramp than where he and another eyewitness established he fell.

The incident in question took place three years prior to the date of the declarations. In *School District No. 1J*, the court found that an asbestos worker's affidavit was based on "distant memory" and could not overcome the propounding party's contradictory interrogatory responses. *School Dist. No. 1J* at 1264–65. As such, the court found that the affidavit was not significantly probative for purposes of summary judgment.

Here, the affidavits of plaintiff's friends relate vague and conclusory references to the accident. None of plaintiff's friends have personal knowledge of the location from which plaintiff was thrown. As such, their declarations do not create any genuine issue of fact for purposes of summary judgment.

■ In conclusion, despite plaintiff's efforts to create a genuine issue of material fact with respect to the location from which he was thrown, the uncontroverted evidence in this case establishes that plaintiff was thrown from a landing area of the pedestrian ramp. As such, the guardrail height in that location would be forty-two inches. Thus, regardless of whether defendant failed to meet the Uniform Building Code requirements in certain locations along the ramp, its failure to do so did not contribute to plaintiff's injuries, since the area from which he was thrown was up to code.

The location from which plaintiff was thrown is not a genuine issue of material fact and may not serve as a basis upon which plaintiff may oppose summary judgment. Defendant's failure to maintain the entire guardrail at a height of forty-two inches did not contribute to plaintiff's injuries, as the spot from which plaintiff was thrown was in fact surrounded by a forty-two inch guardrail.

## C. THE FTCA AND THE DISCRETIONARY FUNCTION EXCEPTION

Summary judgment may be granted with respect to plaintiff's fencing-in claim on the basis of the discretionary function exception to the Federal Tort Claims Act, which precludes defendant's liability as a matter of law. Plaintiff's guardrail height claim, however, is not precluded by the discretionary function exception. Although summary judgment with respect to the guardrail height claim may be granted without reaching this issue, the Court will nonetheless provide analysis.

### 1. The FTCA and its Discretionary Function Exception, in General

The United States enjoys immunity from suits except to the extent it consents to be sued. *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). The FTCA, 28 U.S.C. §§ 1346, 2671–78, 2680, waives sovereign immunity from suit for certain torts committed by federal employees. The FTCA, 28 U.S.C. § 2674, provides in relevant part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

■ The discretionary function exception to the FTCA, set forth in 28 U.S.C. § 2680(a), precludes the district court from exercising jurisdiction over "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The United States bears the burden of proving the applicability of the discretionary function exception. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

■ The Supreme Court outlined the applicability of the discretionary function exception in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (hereinafter *Varig* ), and *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). In *Varig,* the Court stated:

[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

467 U.S. at 813, 104 S.Ct. at 2764. In determining the nature of the challenged conduct, "a court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958. If a federal statute, regulation, or policy specifically prescribes a course of conduct, the discretionary function exception does not apply. *Id.* If, however, the challenged conduct does involve an element of choice or judgment, a court must then

"determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* Congress, in enacting the discretionary function exception, "wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through an action in tort." *Varig,* 467 U.S. at 814, 104 S.Ct. at 2764. Accordingly, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959; *see also Begay v. United States,* 768 F.2d 1059, 1064 (9th Cir.1985) ("the exception applies when the agency makes a decision that is grounded in social, economic, and political policy"). In sum, in order for the discretionary function exception to apply, the United States must show that the challenged conduct: "(1) involved an element of judgment and (2) the judgment was grounded in social, economic, or political policy." *Prescott,* 973 F.2d at 703.

### 2. Application of the FTCA and Discretionary Function in this Case

Defendant argues that it is entitled to judgment as a matter of law because its decision to keep certain portions of the pedestrian ramp unfenced and not in compliance with the guardrail height standards of the Uniform Building Code falls within the discretionary function exception to the FTCA. Defendant maintains that its conduct involved an element of judgment and that its judgment was grounded in political policy.

Plaintiff's complaint identifies two allegedly negligent omissions of defendant in this case: its failure to install a ten-foot fence at the spot on the ramp from which plaintiff was thrown (Amended Complaint, p. 4, ¶ 15, lines 12–15); and its failure to maintain the guardrail at the height required by "applicable laws and the applicable building code" at that spot. *Id.,* p. 4, ¶ 14, lines 6–11.

As discussed *supra,* the height of the guardrail at the point from which plaintiff was thrown is not a genuine issue of material fact. If the guardrail height was a genuine factual issue, the discretionary function exception analysis would need to occur in order to determine defendant's potential liability. The issue of whether defendant's failure to fence in the entire ramp is within the discretionary function exception requires a separate analysis. The following is a brief description of the application of the discretionary function exception to each of plaintiff's claims. The discussion, however, is superfluous, because there is a specific Congressional statute removing defendant's decision from liability under the FTCA. This statute will be discussed in section D, *infra* .

In order for the discretionary function exception to apply in this case, the United States must first prove that the challenged conduct did not violate a mandatory provision set forth in some government statute or regulation. The relevant statutes in this case are 41 C.F.R. § 101–19.002 and 40 U.S.C. § 619. Both of these statutes indicate that defendant's agent, the General Services Administration (GSA), had discretion in its decisions whether to install a fence or raise the guardrail to forty-two inches. The Uniform Building Code is a standard guideline for building specifications, but is not binding on defendant.

40 U.S.C. § 619(a) states, in relevant part:

> Each building constructed or altered by the General Services Administration or any other Federal agency shall be constructed or altered, *to the maximum extent feasible as determined by the Administrator or the head of such federal agency,* in compliance with one of the nationally recognized model building codes and with other applicable nationally recognized codes. (emphasis added)

This statute suggests that Congress intended that any decision regarding the height of the guardrail or the fencing in of the walkway be within the discretion of the GSA.

41 C.F.R. § 101–19.002(k) also indicates that the decisions made by GSA with respect to the pedestrian walkway were within the sound discretion of the GSA and were not mandated by any federal regulation. That statute provides, in relevant part:

In the design of new public buildings and alterations to public buildings, the objectives of nationally recognized building and performance codes, standards, and specifications will be met and amplified *according to the needs of GSA* .... (emphasis added)

The fact that GSA could make decisions according to its needs means that judgment and discretion were allowed. Thus, the first prong of the discretionary function analysis is satisfied with respect to both of plaintiff's claims (i.e., the height of the guardrail and the lack of fencing).

Once it is shown that the challenged conduct involved an element of judgment, the United States must then prove that such judgment was based on social, economic, or political policy. Governmental activity "is not necessarily shielded from suit simply because a discretionary function is in some way involved." *Summers v. United States,* 905 F.2d 1212, 1215 (9th Cir.1990). On the contrary, the discretionary function exception requires governmental activity to involve the balancing of competing policy considerations. In *Varig,* plaintiffs sued the United States claiming that two plane crashes were the result of negligent inspection and certification by the Federal Aviation Administration. Ruling in favor of the United States, the Court stated that "when an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Varig,* 467 U.S. at 819–20, 104 S.Ct. at 2767–68. In *Childers v. United States,* 40 F.3d 973 (9th Cir.1994), *cert. denied,* 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995), the parents of an eleven-year-old boy who fell to his death in a national park operated by the National Park Service (NPS) brought an action against the United States under the FTCA. The Ninth Circuit dismissed the suit and concluded that decisions by the N.S. regarding warnings and safety measures fell within the discretionary function exception. More recently, in *Valdez v. United States,* 56 F.3d 1177 (9th Cir.1995), a hiker brought an action against the United States under the FTCA for injuries he suffered when he fell down the face of a waterfall in a national

park. Although the applicable guidelines required NPS employees to "provide any special materials, signs, and programs to alert the public of potential dangers," *id.* at 1180 (citation omitted), the Ninth Circuit found that the discretionary function exception applied:

While the said policy guidelines certainly outline general policy goals regarding visitor safety, the means by which NPS employees meet these goals necessarily involves an exercise of discretion. *These guidelines can be considered mandatory only in the larger sense that they set forth broad policy goals attainable only by the exercise of discretionary decisions.*

*Id.* (emphasis added) The *Valdez* court stated that "[b]ecause the NPS cannot apprise the public of every potential danger posed by every feature of the Park, a degree of judgment is required in order to determine which hazards require an explicit warning and which hazards speak for themselves." *Id.*

■ In the instant case, defendant does not assert any policy considerations that may have guided its decision regarding the height of the guardrail. Since defendant is the moving party, it bears the burden of establishing such information. The Court declines to speculate or conjecture as to the motivations behind defendant's decision to leave the guardrail at thirty-eight inches in some areas. If defendant's decision was grounded in any policy concerns, it should have set those forth in its papers. Since it did not, it fails the second prong of the discretionary function analysis with respect to the height of the guardrail. Thus, defendant is not immune from liability under the discretionary function exception as far as the height of the guardrail claim is concerned.

■ With respect to the fencing question, however, defendant is immune from FTCA liability. In its papers, defendant establishes that its decisions regarding the fencing (or lack of fencing) on the pedestrian ramp were grounded in policy. Defendant notes that during the design planning phase, "concerns were raised over the appearance of contemplated fencing on the east ramp." Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 9. De-

fendant's concern in designing the renovations was that the San Ysidro port of entry is "one of the first sights greeting international travelers entering the United States." *Id.* Defendants feared that "heavy, cage-like fencing and massive bulwarks on those structures could create highly negative first impressions." *Id.* These aesthetic concerns regarding the image projected by the United States upon visitors do fall within the ambit of the discretionary function exception and thus satisfy the second prong of the exception's analysis.

Accordingly, Defendant has satisfied the second prong of the discretionary function analysis set forth in *Varig, Berkovitz,* and *Prescott* with respect to plaintiff's fencing claim, but not with respect to plaintiff's claim regarding the height of the guardrail.

### 3. Effect of Discretionary Function Exception with Respect to Plaintiff's Fencing Claim

Plaintiff alleges that defendant owed Plaintiff a duty of care to protect him from injuries when it negligently failed to enclose the entire pedestrian ramp with a fence. Plaintiff maintains that defendant is a landowner in this case, although he fails to assert any basis for this conclusion. *See* Plaintiff's Memorandum of Points and Authorities in Opposition of Motion to Summary Judgment at 8. Defendant does not own or operate the pedestrian walkway, nor the west ramp from which plaintiff was thrown. Thus, plaintiff's landowner arguments are unsupported. For the sake of argument, however, the Court will note the effect of the discretionary function exception.

Unlike an ordinary landowner, the United States can foreclose a tort suit against itself by withdrawing the district court's jurisdiction under the discretionary function exception to the FTCA. If discretion is involved, plaintiff's action is barred and it is irrelevant whether or not the government's conduct would otherwise constitute an actionable tort. *Schieler v. United States,* 642 F.Supp. 1310, 1312 (E.D.Cal.1986). As pointed out in *Mitchell v. United States,* 787 F.2d 466, 468 (9th Cir.1986), *cert. denied,* 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987), "[n]egligence ... is irrelevant to the discretionary

function issue. The FTCA itself exempts discretionary functions 'whether or not the discretion involved be abused. 28 U.S.C. § 2680(a).'" Thus, because defendant is immune from suit under the discretionary function exception, the Court rejects plaintiff's claim regarding Defendant's breach of landowner duties as far as the fencing claim is concerned.

### D. DEFENDANT IS IMMUNE FROM LIABILITY FOR ITS DECISIONS REGARDING THE GUARDRAIL HEIGHT UNDER AN INDEPENDENT CONGRESSIONAL STATUTE

■ Even though defendant is not immune from liability for its decisions with respect to the guardrail under the discretionary function exception, it *is* shielded from liability under another statute. As such, as a matter of law, plaintiff's claim regarding the height of the guardrail may not be brought against defendant.

40 U.S.C. § 619(e) shields defendant against any actions arising out of violations of 40 U.S.C. § 619(a) cited in section B of this Order, *supra* (that provision governs the GSA's compliance with building codes when designing or modifying a public structure). Section 619(e) of Title 40 of the United States Code provides, in relevant part:

> No action may be brought against the United States and no fine or penalty may be imposed against the United States for failure to meet the requirements of subsection[] (a) ... of this section.

Plaintiff's complaint circuitously alleges that defendant violated 40 U.S.C. § 619(a) because the guardrail height did not entirely comply with the standards set forth in the Uniform Building Code. Regardless of whether the guardrail did or did not comply with the Uniform Building Code, defendant is shielded from liability under a federal statute in this case, even where it would otherwise be liable under the FTCA.

In the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive." *United States v.*

*James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986) (citations omitted). Section 619(e) of 40 U.S.C. expresses a clear intent on the part of Congress to shield defendant from liability regarding decisions made with respect to the construction and modification of buildings by the GSA. As such, defendant cannot be liable for its decisions regarding the height of the guardrail.

### E. SUMMARY JUDGMENT CANNOT BE GRANTED ON THE BASIS OF THE INDEPENDENT CONTRACTOR EXCEPTION TO THE FTCA BECAUSE A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE STATUS OF THE FIRMS HIRED BY DEFENDANT

Defendant maintains that it is immune from liability to plaintiff under the independent contractor exception to the FTCA. The FTCA is a limited waiver of sovereign immunity, making the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The FTCA defines government employees to include officers and employees of "any federal agency" but excludes "any contractor with the United States." *Id.* at 813–14, 96 S.Ct. at 1975–76 (citing 28 U.S.C. § 2671). Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver. *Id.* at 814, 96 S.Ct. at 1976.

Under the FTCA, the United States is subject to liability for the negligence of an independent contractor only if it can be shown that the government had authority to control the detailed physical performance of the contractor and exercised substantial supervision over its day-to-day actions. *Laurence v. Department of the Navy,* 59 F.3d 112, 113 (9th Cir.1995).

In the instant case, defendant appears to believe it can claim immunity under *both* the discretionary function exception to the FTCA *and* the independent contractor exception. However, if the persons making the decisions regarding the height of the guardrail and the lack of fencing were indeed independent contractors and not government employees, then the discretionary function exception does not apply, because the United States would not have been the one making the discretionary decisions. Alternatively, if government employees were the ones making the decisions, then the independent contractor exception cannot apply.

Defendant's papers resolve this ambiguity somewhat. Defendant contends that it hired independent contractors to design the modifications to the pedestrian ramp. It maintains that, to the extent that the United States or its employees (through the GSA) was involved in the design process, any decisions made by those employees are covered by the discretionary function exception. Any decisions not made by the GSA, defendant appears to maintain, were made by independent contractors hired by the government. As noted in the introduction to this Order, the fencing was designed by ICE and the wheelchair lane by Matthews. Soltek of San Diego performed the construction. Holmes & Narver managed and supervised the construction. *See* Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 10.

Plaintiff contends that these four firms were not true independent contractors because GSA retained significant control and supervision over the project. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment at 20. Whether the independent contractor exception to the FTCA applies can only be determined once it is established whether the four firms were truly independent contractors. Thus, a genuine issue of material fact exists as to the status of the firms hired by defendant to design and perform the modifications to the pedestrian ramp. This fact can only be determined by establishing the degree of control which defendant's agent, the GSA, retained over the project. As such, defendant's claim that its conduct is barred by the independent contractor exception to the FTCA must fail for the time being. Summary judgment is thus not to be granted on this basis. This issue need not be reached

with respect to plaintiff's fencing claim, however, because defendant is entitled to summary judgment on that claim under the discretionary function exception to the FTCA.

## IV. CONCLUSION

The Court hereby orders that:

1. Summary judgment be GRANTED with respect to plaintiff's claim that defendant negligently failed to enclose the entire ramp with a fence because:

   a) the spot from which plaintiff was thrown is not a genuine issue of material fact

   and

   b) the discretionary function exception to the FTCA applies to shield defendant from liability on this issue.

2. Summary judgment be GRANTED with respect to plaintiff's claim that defendant negligently failed to maintain the guardrail at forty-two inches because:

   a) the location from which plaintiff was thrown is *not* a genuine issue of material fact

   and

   b) that location did contain a guardrail of forty-two inches in height, so any negligence on the part of defendant with respect to the height of the guardrail did not contribute to plaintiff's injuries.

3. Although the Court need not reach the issue, the discretionary function exception does not apply to shield defendant from liability with respect to plaintiff's claim that defendant negligently failed to maintain the guardrails of the pedestrian ramp at a height of forty-two inches. This is because defendant fails to assert any policy considerations underlying its decision to leave some of the guardrails at a height of thirty-eight inches. The Court need not reach this issue because the height of the guardrail at the spot from which plaintiff was thrown *was* forty-two inches.

4. Although the Court need not base its summary judgment decision on this ground, an independent federal statute (40 U.S.C. § 619(e)) applies to shield defendant from liability for its decisions regarding the height of the guardrail.

5. Although the Court need not reach the issue, summary judgment cannot be granted on the grounds that the independent contractor exception of the FTCA shields defendant from liability. Whether such provision applies depends on the status of the firms hired by defendant, which is a disputed factual issue. The Court grants summary judgment regardless of this factual issue for the reasons set forth above.

**IT IS SO ORDERED.**