Irene CAZALES, Individually and as
Next Friend of Rogelio Cazales,
et al., Plaintiffs,

v.

LECON, INC., et al., Defendants,

LECON, INC., Third–Party Plaintiff,

v.

UNITED STATES of America,
Third–Party Defendant.

Civil Action No. H–96–3659.

United States District Court,
S.D. Texas.

Oct. 2, 1997.

Patricia A. Hill, Patricia Hill and Associates, Kyle Allen Frazier, Frazier & Frazier, Houston, TX, for Irene Cazales, Rogelio Cazales, Jr., Mayra S. Cazales, Felipe Cazales Gonzales, Rosa Maria Rosa Maria Fraire De Cazales.

Christopher C.Pappas, Dunn Kacal Adams Pappas and Law, Houston, TX, for Lecon, Inc.

James David Ebanks, Giessel Barker and Lyman, Houston, TX, for Landscape Construction Inc.

Gina Vaccaro Fulkerson, Thomas H. Padgett, Jr., Hudgins Hudgins & Warrick, Houston, TX, for Heights Electric, Inc., Associated Electrical Services Inc.

William K. Luyties, Lorance & Thompson, Houston, TX, for Huitt-Zollars Inc.

William Brad Howard, Office of U.S. Atty., Houston, TX, for Bob Clifton, U.S.

Joseph Alan Callier, Callier & Garza, Houston, TX, for U.S.

Craig Haworth Clendenin, Benckenstein Norvell & Nathan, Houston, TX, for O'Day Drilling Co.

Mark Travis Curry, Hughes Watters & Askanase, Houston, TX, for Valley Forge Ins. Co.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant and Third–Party Defendant United States Department of Veterans Affairs' ("the VA") motions to dismiss for lack of subject matter jurisdiction and for failing to state a claim upon which relief can be granted, or in the alternative for summary judgment (#'s 7, 85). The VA seeks to dismiss Plaintiffs Irene Cazales, Individually and as Next Friend of Rogelio Cazales and Mayra S. Cazales, Felipe Cazales Gonzales, and Rosa Maria Fraire de Cazales's ("the Cazaleses") wrongful death and survival action and Lecon, Inc.'s ("Lecon") third-party claim seeking contribution or indemnification.

Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the United States' motions for summary judgment should be GRANTED.

## I.  Background

The present case arises from the death of Rogelio Cazales ("Rogelio"), who was electrocuted while excavating at the Houston National Veteran's Administration Cemetery ("the cemetery"). In 1995, the VA awarded a contract to Lecon to serve as the general contractor in the expansion of the cemetery. Lecon, in turn, subcontracted work to: (1) Associated Electrical ("Associated"), the electrical subcontractor; (2) Huitt–Zollars ("Huitt"), the engineering subcontractor; and (3) Landscape Construction ("Landscape"), the landscaping subcontractor. This project included the development of 130 acres of land to hold 20,000 grave sites and other improvements, including refurbishing two well houses and related electrical equipment. One of the wells, Number Two, was located in an area in which a fence topped by barbed wire surrounded the perimeter. Before the project commenced, padlocks secured the gate to this area as well as the metal cabinet containing the live electrical switch. Signs were posted on both the front and rear doors to the enclosure containing the electrical switch with the warning "Danger/High Voltage" printed in large letters. When the project began, Lecon asked the VA to remove its padlocks to permit Lecon to substitute its own padlocks. Clyde Rowney, the Cemetery Director, complied with Lecon's request.

On January 3, 1996, Charles Winward ("Winward"), the foreman of the electrical subcontractor, Associated, went to Bob Clifton ("Clifton"), the VA Resident Engineer, in an attempt to determine whether the area around Well Number Two was electrified, or "hot." Although he was not performing his weekly safety check at the time, Clifton accompanied Winward to the switch of Well Number Two, but Winward did not have the appropriate equipment with him to test the switch. After securing a voltage tester later in the day, Winward tested the switch and determined that it was "hot." Winward informed Clifton that the switch was electrified, but they were unable to ascertain the manner in which the power could be turned off. Winward told his boss, the electrical subcontractor's superintendent, that the switch was "hot." Clifton contends that on the same day he also told Dan Montana ("Montana"), the project manager for Lecon, that the switch was "hot," and requested that Montana provide him with the "as built" plans so that it could be determined how to shut off the switch. Montana denies this. Nevertheless, a few days later, Montana provided the "as built" plans to Clifton, who passed them on to Winward. In his declaration, Winward stated that he informed Montana on January 4, 1996, as well as on other occasions, that the switch was energized.

On January 23, 1996, Rogelio, an employee of Landscape, was operating a backhoe in an attempt to excavate for a water line at the site of the cemetery expansion. In his excavation, Rogelio uncovered a gray electrical conduit. Rogelio then went to his supervisor at Landscape to determine if the wires within the conduit were "hot." After checking with Associated, Lecon, and Huitt, Rogelio's supervisor advised him that the wiring had been de-energized years ago. As a result, Rogelio continued his excavation duties. When the excavation took him near the transformer at Well Number Two, he got off the backhoe to see whether the transformer was connected. Despite two warning signs cautioning "Danger/High Voltage," Rogelio touched the transformer and was immediately electrocuted.

The underlying contract between Lecon and the VA contains several provisions addressing the respective duties and responsibilities of Lecon and the VA. At least one of these provisions transfers the primary duty of ensuring the safety of employees and other persons during the project to Lecon. Under clauses 1.42(d) and 1.43 of the contract, the VA retains an "oversight" or "policing" role with regard to safety on the job site. These and other provisions mandate that the VA's Contracting Officer conduct regular inspections of the work site to ensure the safety of government personnel and the public.[1] The Contracting Officer is also required to inform the contractor in writing of any imminent dangers to the public or government personnel that he discovers.

Notably, Clifton was the only VA employee assigned to the 130-acre site, while the contractors often had in excess of thirty employees on the job at various locations performing different functions, making it impossible for Clifton to monitor all safety hazards constantly. In determining which areas warranted the greatest attention, Clifton gave priority to areas where VA employees or visitors were likely to be found, as his spot checks were to be performed for the government's benefit, not for that of its contractors or subcontractors. In his declaration, Clifton stated that he did not expect to find VA visitors or employees around the transformer. Clifton further indicated that he had no reason to believe that any imminent danger existed at or around the transformer.

The Cazaleses initially filed suit in probate court in Harris County, Texas, against Lecon and others, asserting negligence, wrongful death, and survival claims. Lecon, in turn, filed a third-party claim against Clifton seeking contribution and/or indemnification for his alleged negligence in causing the electrocution of Rogelio. The case was removed to federal court on October 25, 1996. On December 3, 1996, the VA was substituted for Clifton as a third-party defendant, and on

---

1. The contract also specifies that the "[g]overnment inspections and tests are for the sole benefit of the Government and do not—(1) relieve the Contractor of responsibility for providing adequate quality control measures."

May 1, 1997, the Cazaleses amended their complaint to name the VA as an additional defendant.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). The moving party, however, need not negate the elements of the nonmovants' case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23; *Anderson,* 477 U.S. at 257; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. The controverted evidence must be viewed in the light most favorable to the nonmovants, and all reasonable doubts must be resolved against the moving party. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *Anderson,* 477 U.S. at 255; *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Serv.*

*Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *see Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 322. "In such situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

### B. *Sovereign Immunity*

The VA contends that this court lacks subject matter jurisdiction over the VA because it is entitled to sovereign immunity. The VA maintains that any waiver of sovereign immunity contained in the Federal Tort Claims Act ("FTCA") is inapplicable due to certain exceptions set forth in the Act. Specifically, the VA argues that the discretionary function, independent contractor, and misrepresentation exceptions operate independently to bar any waiver of sovereign immunity.

The principle of sovereign immunity has been a part of the United States' federal system of government from its inception. *See Welch v. Texas Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 488, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). It is based "on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *See Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (1907). Sovereign immunity is grounded in the notion that "a sovereign must be free from judicial compulsion in the carrying out of its policies within the limits of the Constitution." *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). Sovereign immunity operates to preclude lawsuits against the United States by individuals or states of the union. *See Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). It is a jurisdictional bar to such suits unless the

United States waives immunity and consents to suit. *See United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Shaw,* 309 U.S. 495, 501, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *Bank One Texas, N.A. v.. Taylor,* 970 F.2d 16, 33 (5th Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). Accordingly, a court may not exercise subject matter jurisdiction over a claim against the federal government except as Congress or the Constitution permits. *See Read,* 322 U.S. at 51; *Wilkerson v. United States,* 67 F.3d 112, 118 (5th Cir.1995). The existence of Congressional consent is a prerequisite for jurisdiction. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

■ "Congress has broad powers over the jurisdiction of the federal courts and over the sovereign immunity of the United States . . . ." *California v. Arizona,* 440 U.S. 59, 66, 99 S.Ct. 919, 59 L.Ed.2d 144 (1979). Hence, Congress can grant jurisdiction to hear a case by waiving the federal government's sovereign immunity. *See id.* The terms of the United States' waiver define the contours of a court's jurisdiction to entertain such a suit. *See FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986). A waiver of sovereign immunity, however, must be strictly construed in favor of the sovereign and will not be expanded beyond that which the statute requires. *See United States Dep't of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). The federal government's renunciation of its immunity must be unequivocally expressed. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Sherwood,* 312 U.S. at 590; *Wilkerson,* 67 F.3d at 118; *Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299, 306 n. 10 (5th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). Therefore, a court cannot imply a statutory waiver of sovereign immunity. *See Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Furthermore, when Congress attaches conditions to a waiver of sovereign immunity, those conditions must be strictly observed and courts generally should not create exceptions to them. *See Block,* 461 U.S. at 287. Similarly, when a court is confronted with a purported waiver of immunity, the court must construe any ambiguities in favor of immunity. *See United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). Thus, the United States is immune from suit except as specifically provided by statute or as implied from the Constitution. *See Armendariz–Mata v. United States Dept. of Justice,* 82 F.3d 679, 682 (5th Cir.) (citing *Meyer,* 510 U.S. at 475), *cert. denied,* —— U.S. ——, 117 S.Ct. 317, 136 L.Ed.2d 232 (1996); *Wilkerson,* 67 F.3d at 118.

A waiver of sovereign immunity, however, does not require Congress to express its intent in some "ritualistic formula." *Franchise Tax Bd. v. United States Postal Serv.,* 467 U.S. 512, 521, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984). Indeed, a court should not thwart Congress's intent to authorize suits against the United States by means of restrictive interpretations of statutory language. *See Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Canadian Aviator v. United States,* 324 U.S. 215, 222, 65 S.Ct. 639, 89 L.Ed. 901 (1945). "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. [Courts] are not to add to its rigor by refinement of construction, where consent has been announced." *United States v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 383, 70 S.Ct. 207, 94 L.Ed. 171 (1949) (citation and internal quotations omitted). Therefore, courts must not tailor a waiver of sovereign immunity that Congress intended. *United States v. Idaho,* 508 U.S. 1, 7, 113 S.Ct. 1893, 123 L.Ed.2d 563 (1993).

### C. The Federal Tort Claims Act and the Discretionary Function Exception

■ The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. It allows federal courts to exercise jurisdiction over claims

against the United States for injury or loss of property, or for personal injury or death caused by the negligent or wrongful acts or omissions of federal employees while acting in the scope of their employment. *See* 28 U.S.C. § 1346(b). Congress enacted the statute to prevent injustice to those having meritorious claims that otherwise sovereign immunity would bar and to eliminate the burden on Congress of investigating claims for relief.[2] *See United States v. Muniz*, 374 U.S. 150, 154, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA, subject to various exceptions, operates as a waiver of the United States' sovereign immunity. *See Molzof*, 502 U.S. at 305; *Gaubert*, 499 U.S. at 319 n. 4. The Act, however, explicitly waives sovereign immunity only under certain limited circumstances. Once Congress waives immunity, the extent of the United States' liability under the FTCA is generally determined by reference to state law. *See Molzof*, 502 U.S. at 305; *Saraw Partnership*, 67 F.3d at 569. If the substantive law of the state in which the misconduct occurred would not permit recovery, the United States will not be liable under the FTCA for its employees' misconduct. *See Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995).

The FTCA, therefore, is a limited waiver of the government's sovereign immunity. *See id.* at 729. It provides federal courts with jurisdiction to hear certain claims but withholds jurisdiction as to other tortious acts. *See United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Dalehite v. United States*, 346 U.S. 15, 30–34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The discretionary function exception operates as the foremost limitation on a court's jurisdiction under the FTCA. *See, e.g., McNeily v. United States*, 6 F.3d 343, 347 (5th Cir.1993). It withholds jurisdiction over

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

In essence, the discretionary function exception provides that although the federal government has waived its sovereign immunity in limited cases, that immunity remains intact when government agents exercise their discretionary judgment in making policy decisions. The discretionary function exception and the other enumerated exceptions serve the public by: "ensuring that certain governmental activities not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending coverage of the Act to suits for which adequate remedies were already available." *Kosak v. United States*, 465 U.S. 848, 858, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (citation and internal quotations omitted); *see also Gaubert*, 499 U.S. at 323 ("the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort ...") (citation and internal quotations omitted). It was Congress's belief that imposing liability for discretionary acts "would seriously handicap efficient government operations." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (citing *Muniz*, 374 U.S. at 163).

■ Cases addressing the discretionary function exception generally fall into one of two broad categories: 1) negligent design or construction of a government program; or 2)

---

**2.** "Prior to 1946, [and the passage of the FTCA] the sovereign immunity of the United States prevented those injured by the negligent acts of federal employees from obtaining redress through lawsuits; compensation could be had only by passage of a private bill in Congress.

The FTCA replaced that notoriously clumsy ... system of compensation with a limited waiver of the United States' sovereign immunity." *Molzof v. United States*, 502 U.S. 301, 304, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992) (citations and internal quotations omitted).

negligent failure to warn of a hazardous condition. *See Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1538 (10th Cir.1992); *Johnson v. United States Dep't of Interior,* 949 F.2d 332, 336 n. 4 (10th Cir.1992). In both types of cases, it is a question of law whether a court lacks subject matter jurisdiction on the ground that the discretionary function exception applies. *See Buchanan v. United States,* 915 F.2d 969, 970 (5th Cir.1990). The plaintiff bears the initial burden of proving that subject matter jurisdiction exists under the FTCA. *See Valdez v. United States,* 56 F.3d 1177, 1179 (9th Cir.1995); *Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982). The United States, however, bears the ultimate burden of proving that the discretionary function exception applies in a particular case. *See Valdez,* 56 F.3d at 1179; *but see Autery v. United States,* 992 F.2d 1523, 1526 n. 6 (11th Cir.1993) (questioning assignment of burdens), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 458 (1994); *see also Hughes v. United States,* 110 F.3d 765, 767 n. 1 (11th Cir.1997) ("The allocation of burdens is not significant where," as here, "the relevant facts are undisputed").

The determination of whether the discretionary function exception protects a governmental act or omission "requires a particularized and fact-specific inquiry." *Prescott v. United States,* 973 F.2d 696, 703 (9th Cir. 1992). The contours of the discretionary function exception, however, elude precise definition. *See Varig Airlines,* 467 U.S. at 813 (noting the impossibility of defining "with precision every contour of the discretionary function exception"); *FDIC v. Irwin,* 916 F.2d 1051, 1053 (5th Cir.1990) ("decades of litigation have yet to yield a clear demarcation between actionable torts and immune discretion ... [i]mprecision appears inevitable" (citation omitted)). The FTCA does not define "discretionary function," which has resulted in extensive litigation over the meaning of the term. *See Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). If the word "discretionary" were construed broadly, it would nullify the goal of the FTCA. *See id.* Thus, "the statutory language does not apply to every situation in which there is an actual option to choose between courses of action and inaction." *Id.*

Despite the imprecision inherent in the concept, the United States Supreme Court has developed a two-part test to determine whether governmental conduct is immune from suit under the discretionary function exception. *See Gaubert,* 499 U.S. at 322; *Berkovitz,* 486 U.S. at 536; *Dalehite,* 346 U.S. at 34. First, the acts in question must involve a true discretionary choice, not one prescribed by statute or regulation. *See Gaubert,* 499 U.S. at 322–23; *Berkovitz,* 486 U.S. at 536; *McNeily,* 6 F.3d at 348. If a federal statute, regulation, or policy specifically prescribes a course of conduct, the discretionary function exception does not apply. *See Berkovitz,* 486 U.S. at 536. On the other hand, if the controlling statutes, regulations, and administrative policies do not mandate a course of action, the government's decisions on such matters involve an exercise of discretion. *See Rosebush v. United States,* 119 F.3d 438, 442 (6th Cir.1997). Such decisions are discretionary only if they involve "judgment or choice." *Williams v. United States,* 50 F.3d 299, 309 (4th Cir.1995). When an employee effectively has no choice, the only issue is whether the employee followed the directive. *See Dalehite,* 346 U.S. at 36. In such a case, there can be no discretionary act protected by the exception.

Second, if the conduct at issue involves an exercise of judgment, the court must determine whether that judgment is grounded in considerations of public policy. *See Gaubert,* 499 U.S. at 322–23. Policy considerations are "the touchstone for determining whether the discretionary function exception applies." *Andrulonis v. United States,* 952 F.2d 652, 654 (2d Cir.1991). In ascertaining whether policy questions are at the root of a governmental action, courts should not focus on the subjective intent of the government employee in question or inquire whether the employee actually weighed social, economic, or political policy considerations before acting. *See Gaubert,* 499 U.S. at 325. Likewise, the decision should not rest on the status of the governmental employee. *See id.* ("Day-to-day management ... regularly requires judgment as to which of a range of permissible courses is the wis-

est"); *Dalehite*, 346 U.S. at 36 (discretionary function exception also extends to acts of subordinates in carrying out the operation of government); *Baldassaro v. United States*, 64 F.3d 206, 208 (5th Cir.1995), *cert. denied*, 517 U.S. 1207, 116 S.Ct. 1823, 134 L.Ed.2d 929 (1996). Instead, the focus should be on the nature of the actions taken and on whether these are susceptible to policy analysis. *See Gaubert*, 499 U.S. at 325; *Collins v. United States*, 783 F.2d 1225, 1229 (5th Cir. 1986). Policy analysis may include the weighing of competing interests or the examination of economic constraints in light of the needs of the public. *See Estate of Callas v. United States*, 682 F.2d 613, 620 (7th Cir. 1982). A decision as to the best allocation or use of resources is "inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second-guessing ...." *Baum v. United States*, 986 F.2d 716, 724 (4th Cir.1993).

Numerous courts have construed the "susceptible to policy analysis" prong of the discretionary function test in the context of safety issues. The Eleventh Circuit, for example, held that the decision of a prosecutor whether to protect a victim threatened by a suspected offender is susceptible to policy analysis. *See Ochran v.. United States*, 117 F.3d 495, 501 (11th Cir.1997); *see also Hughes*, 110 F.3d at 768–69 (government's decision to limit security measures was within discretionary function exception); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir.1995) (discretion in determining whether halfway house resident poses danger to public entails policy analysis); *Kiehn v. United States*, 984 F.2d 1100, 1103 (10th Cir.1993) (decision whether to post warning sign is clearly discretionary); *Bowman v. United States*, 820 F.2d 1393, 1395 (4th Cir.1987) (decision not to place guardrails in certain area was discretionary because it requires balancing of economic, environmental, and safety interests). In another situation, the Third Circuit found that the Nuclear Regulatory Commission's decision not to report safety information was discretionary. *See General Public Utils. Corp. v. United States*, 745 F.2d 239, 247 (3d Cir.1984), *cert. denied*, 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985); *see also ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n/FSLIC*, 36 F.3d 409, 411 (5th Cir.1994). Similarly, the Seventh Circuit ruled that the government's decision not to warn military personnel of the dangers involved in handling nuclear weapons fragments falls under the discretionary function exception. *See Maas v. United States*, 94 F.3d 291, 297 (7th Cir.1996); *see also Valdez*, 56 F.3d at 1180 (discretionary function exception found to apply to government decision not to bring existence of a natural hazard to the attention of the public); *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 511 (7th Cir.1995) (determinations requiring balancing of safety and economics fall within discretionary function exception); *Graves v. United States*, 872 F.2d 133, 137 (6th Cir.1989) (government establishment and implementation of safety precautions after closure of lock on a river is exempt from suit under discretionary function exception).

In another line of cases, the government's decision to sell potentially dangerous materials or objects was held to be an activity protected under the discretionary function exception. *See Kane v. United States*, 15 F.3d 87, 89 (8th Cir.1994) (VA decision to sell property without inspection for asbestos was within discretionary function exception); *see also Grammatico v. United States*, 109 F.3d 1198, 1202 (7th Cir.1997) (the government's decision concerning whether it will inspect surplus property offered for sale for potential safety problems is discretionary because such a decision is clearly grounded in public policy considerations); *Myslakowski v. United States*, 806 F.2d 94, 98 (6th Cir.1986) (discretionary function exception covered decision to sell postal trucks despite government's failure to warn of dangers); *Smith v. Johns–Manville Corp.*, 795 F.2d 301, 308–09 (3d Cir.1986) (sale of asbestos); *Ford v. American Motors Corp.*, 770 F.2d 465, 467–68 (5th Cir.1985) (sale of postal trucks). Supervision of government contractors was also found to be a discretionary function. *See Kirchmann v. United States*, 8 F.3d 1273, 1277 (8th Cir.1993) (supervision of contractors who contaminated groundwater during

construction at missile site found to be discretionary); *see also Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir.1995) (issues of employee supervision and retention generally fall within the discretionary function exception); *K.W. Thompson Tool Co. v. United States,* 836 F.2d 721, 728 (1st Cir.1988) (failure to train personnel falls under the discretionary function exception). Nevertheless, while these cases provide some parameters, the discretionary function analysis always requires a fact specific inquiry. *Prescott,* 973 F.2d at 703.

In this case, the VA contends that its actions fall within the discretionary function exception including: (a) the contractual delegation of responsibility for worker safety to Lecon; (b) the VA's decision to limit its safety inspections to weekly spot checks and not to look for safety violations in areas where it would not expect to find VA employees, visitors and patients; and (c) the extent to which the VA monitors its contractor by conducting safety checks.

1. *Contractual Delegation of Responsibility for Safety*

The parties have not cited any statute, regulation, or statement of policy mandating that the VA retain full responsibility for worker safety at construction projects on its property. When there is no statute or regulation compelling the performance of certain activities, the government may exercise discretion in conducting such activities. Thus, the VA had discretion whether to delegate responsibility for worker safety at its Houston cemetery. This discretion is statutorily protected from an FTCA suit if it is susceptible to policy analysis.

The VA contends that its decision to delegate responsibility to the principal contractor was based on questions of public policy. It asserts that its decision was grounded in social, technical, and economic policy considerations. Specifically, the VA maintains that it was faced with policy decisions concerning which party would be in the best position to supervise construction, observe problems, police areas to be used by workers, and expeditiously correct hazards as they arose. Notably, neither the Cazaleses nor Lecon

seriously contest that such decisions are grounded on issues of public policy. Indeed, such issues necessarily involve policy determinations, as they entail the weighing of competing interests in light of economic constraints. As discussed above, determinations regarding the best allocation of resources are "inherently bound up in considerations of economic and political policy, and accordingly are precisely the type of governmental decisions that Congress intended to insulate from judicial second-guessing." *Baum,* 986 F.2d at 724.

In arguing that the discretionary function exception does not apply to the case at bar, the Cazaleses and Lecon essentially seek to have this court substitute its own judgment with respect to the propriety of the VA's decision to assign primary responsibility for safety to Lecon. Specifically, they characterize the issue as whether Clifton had discretion to refrain from informing Lecon that the transformer in question was "hot." That question, in addition to presuming contested factual issues, is dependent upon whether the VA had discretion to assign responsibility for safety to Lecon and the extent to which the VA had discretion in discharging any retained safety responsibilities. The FTCA, however, does not instill this court with jurisdiction to "second-guess" the VA in these matters. Rather, through the discretionary function exception, Congress sought to insulate such decisions from judicial review. Courts addressing comparable issues have arrived at the same conclusion.

For example, in *Kirchmann,* where a government contractor's negligence allegedly caused contamination of the groundwater, the Eighth Circuit found that the discretionary function exception applied to the government's determination of the level of scrutiny it would exercise in overseeing the contractors. *See* 8 F.3d at 1277. The court held that, despite the government's retention of a right to inspect thoroughly every detail of the contractor's work, it had discretion to determine the level of scrutiny it would exercise in those inspections. *See id.* The court found that decisions "made in allocating personnel and finances to administration of the construction contracts were grounded in poli-

cy considerations related to the national defense and the personnel and economic resources of the nation." *Id.* The court noted:

In other cases interpreting the FTCA, courts have found protected as policy judgments decisions related to "the extent to which [an agency] will supervise the safety procedures of private individuals," because of the impact of those decisions on the "feasibility and practicality" of a government program with respect to "staffing and funding" and the "efficient allocation of agency resources."

*Id.* at 1277–78 (citing *Varig Airlines,* 467 U.S. at 819–20).

A similar situation is presented here. As in *Kirchmann,* the VA reserved the right to inspect the construction site and require the correction of hazards. Also, as in *Kirchmann,* the VA exercised its discretion by assigning the primary responsibility for workplace safety to the general contractor, Lecon. The extent to which the government chose to supervise Lecon in discovering and correcting workplace hazards was left to the government's discretion, as it was in *Kirchmann.* The VA's decision necessarily entailed an analysis of, among other policy considerations, the competency of the contractors, the expertise and efficiency of its own personnel, the requirements of the project, the extent of available financial resources, the scope of the project, and the inherent danger of each aspect of the project. Because the VA's decisions regarding the assignment of safety responsibility and the extent of its own role in policing job site safety are susceptible to policy analysis, they are statutorily protected discretionary functions.

Furthermore, in *Varig Airlines,* at issue was the FAA's airplane certification process, in which it inspected and certified the fitness of planes, but assigned the primary duty for safety to the manufacturer and operator. *See* 467 U.S. at 816. When a number of individuals perished in an airplane fire, the survivors sued the FAA alleging that it had negligently inspected and certified the fitness of the airplane. *See id.* at 800. Though the government may have been negligent in performing its voluntarily assumed duty to de-

tect and warn the public of dangerous conditions in airplanes, the Supreme Court held that the discretionary function exception applied. *See id.* at 815–16. The Court explained:

The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the "nature and quality" protected by § 2680(a). Judicial intervention, through private tort suits, in the FAA's decision to utilize a "spot-checking" program as the best way to accommodate the goal of air transportation safety and the reality of finite agency resources would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention that the discretionary function exception was designed to prevent. It follows that the acts of FAA employees in exercising the "spot-check" program are also protected by that exception, because respondents alleged that the FAA failed to check particular items in the course of its review.

*Id.* at 798–99. In *Varig,* the Court found that the government's assignment of the duty to ensure airplane safety to the manufacturer and the operator, despite the government's voluntary assumption of inspection and certification procedures, was a decision protected under the discretionary function exception. Furthermore, this protection extended to the government's decision to ensure safety only through the use of "spot checks."

In this case, the VA's assignment of the primary duty for safety on the job site to Lecon, despite its retention of authority to inspect the site, is a discretionary act which comes under the aegis of the discretionary function exception. Under the contract between the VA and Lecon, the VA delegates to Lecon the responsibility to "maintain work environments and procedures which will (1) safeguard the public and Government personnel, property, materials, supplies, and equipment exposed to the Contractor's operations and activities ...." § 1.42(a) This court is not authorized to determine whether the VA's decision was appropriate or correct. Furthermore, if it were shown that the VA

was negligent in assigning the primary duty for safety to Lecon or in carrying out the discretionary authority that the VA retained, this court is without jurisdiction to award damages for any negligent exercise of that discretion. The discretionary function exception of the FTCA is operative in the present context without regard to any alleged abuse of discretion. *See Ochran,* 117 F.3d at 502 n. 2; *Rosebush,* 119 F.3d at 442. This court, therefore, is precluded from "second-guessing" the discretionary acts of the VA on the design level.

### 2. *Safety Inspections and Monitoring of Contractors*

■ The VA further maintains that the discretionary function exception extends to certain decisions made at the operational level. Specifically, the VA asserts that the decision to limit its safety inspections to weekly spot checks and not to look for safety violations in areas where it would not expect to find VA employees, visitors, or patients, also is protected by the discretionary function exception. Because the VA had discretion in fixing the scope of its delegation of responsibility for safety on the project, it necessarily had discretion to determine the extent to which it would retain responsibility for worksite safety. The Supreme Court has made it clear that the discretionary function exception covers decisions made at the operational or managerial level as well as at the planning level. *See Gaubert,* 499 U.S. at 325.

The contract between the VA and Lecon sets forth the extent to which the VA reserved to itself the responsibility to inspect the worksite for hazards. Specifically, § 1.43(a) states that the VA Safety Officer "is responsible for enforcing all safety regulations as they apply to the safety of Department of Veterans Affairs employees, visitors, and patients." Furthermore, the Safety Officer is required to conduct weekly safety inspections, to note all violations of safety and health regulations, and to instruct the contractor to correct any violations. Additionally, the Safety Officer is obligated to inform the contractor of any condition that poses serious or imminent danger to the health or safety of the public or government personnel.

Applying the two-step analysis set forth in *Gaubert,* these provisions prevent the government from exercising discretion in some areas, while implicitly granting discretion in others. As discussed above, the government exercised its Congressionally-protected discretion in determining which responsibilities to delegate and which to retain. That exercise of discretion, therefore, required the VA to fulfill the duties and responsibilities that it retained. Hence, the VA had no discretion as to the nature of its retained responsibilities. *See Daigle,* 972 F.2d at 1538; *Payton v. United States,* 679 F.2d 475, 479 (5th Cir.1982). As to the precise manner in which it performed those retained responsibilities, however, the VA still maintained discretion. Thus, the VA had no discretion to, among other things, conduct less than weekly inspections of the work site or to refrain from informing the contractor of a danger to the public or government personnel. Within these areas, however, the government still could exercise its discretion in performing those duties. For example, the Safety Officer was entitled to use his discretion in assessing whether specific conditions constituted a danger to the public or governmental personnel. Furthermore, the Safety Officer had discretion to determine when hazards and potential hazards raised a sufficiently serious or imminent danger that notification was required and to determine the wording of such notification. Similarly, the Safety Officer was entitled to exercise his discretion in determining the amount of scrutiny exercised in his weekly inspections and the geographical and temporal scope of those inspections. *See Varig Airlines,* 467 U.S. at 819–20. As noted above, because these acts are susceptible to policy analysis, such acts of discretion are entitled to deference by the judiciary in accordance with the discretionary function exception to the FTCA.

The Cazaleses and Lecon have not shown that the VA failed to comply with its retained duties as set forth in the contract or in any regulation. Lecon merely alleges that Clifton did not inform Lecon that the transformer in question was electrified. Although the VA contests the accuracy of that allegation, even if true, it does not amount to an omission of any duty required by any applicable

statute, regulation, contract, or statement of policy. Without a governing statement of policy, Clifton's determination as to whether an electrified transformer constituted a serious and imminent danger in view of the two existing "Danger/High Voltage" signs, the electrical subcontractor's awareness of the transformer's electrified state, and his belief that he had notified the general contractor of the "hot" transformer, was committed to his discretion. In his declaration, Clifton indicated that he had *no reason to believe that any imminent danger existed* at or around the transformer. Hence, he was under no duty to inform Lecon of the electrified transformer. The propriety of that determination should not now be second-guessed by this court with the benefit of hindsight. *See Gaubert,* 499 U.S. at 323; *Varig Airlines,* 467 U.S. at 798–99; *Baum,* 986 F.2d at 724. "When officials contemplate the plethora of issues surrounding the decisions concerning investigation, monitoring, and public notification, these officials directly engage in making public policy." *Western Greenhouses v. United States,* 878 F.Supp. 917, 928 (N.D.Tex.1995) (citing *Daigle,* 972 F.2d at 1538). The Cazaleses and Lecon's allegations of negligence concern functions that are susceptible to policy analysis and, therefore, are of a discretionary nature. "The discretionary function issue presents a 'threshold ... jurisdictional issue which precedes any negligence analysis.'" *Daigle,* 972 F.2d at 1538 (quoting *Johnson v. United States,* 949 F.2d 332, 335–36 (10th Cir.1991)). Accordingly, even if Clifton acted negligently, the discretionary function exception protects the VA from suit under the FTCA.

III. *Conclusion*

Accordingly, the VA's motion for summary judgment is GRANTED. The discretionary function exception to the FTCA precludes this court from exercising jurisdiction over the VA under the circumstances presented in this case. There are no outstanding issues of material fact, and the VA is entitled to judgment as a matter of law.

IT IS SO ORDERED.